Schearer *v.* Harber.

## SCHEARER *v.* HARBER.

EVIDENCE.—*Interpreter.*—Evidence of what an interpreter testified as received by him in a foreign language from a witness, on a former trial, cannot be given by one who heard the evidence, unless the interpreter be dead, or insane, out of the jurisdiction, or sick and unable to testify, or having been summoned, appears to have been kept away by the adverse party.

APPEAL from the Allen Common Pleas.

WORDEN, C. J.—The original opinion in this case having been lost from the files, we have, in passing upon the petition for rehearing, reconsidered the whole case, and will state it as fully as if no opinion had been previously prepared.

The action was originally brought before a justice of the peace, by the appellant against the appellee, where it was tried, and an appeal was taken to the court of common pleas, where, upon trial, a verdict and judgment was rendered for the defendant.

The case made for our decision is shown by the following bill of exceptions taken by the appellant, which we set out nearly in full. After entitling the cause, the bill of exceptions proceeds as follows:

"Be it remembered that the foregoing cause came on for trial at the February term, in the year 1869, of said court, upon appeal from A. P. Creighton, a justice of the peace in and for said county; that the only pleading filed in said cause was the complaint, which was in the words and figures following, to wit:

'December, 1864.

Mr. Nicklaus Harber debtor to me, one hundred and ten dollars for two oxen.                                    $110.00.

PHILLIP SCHEARER.'

That on the 5th day of March, 1869, the same being the eleventh judicial day of said term, a jury was duly impanelled and sworn to try said cause; that during the trial of said cause before the jury aforesaid, the said plaintiff, Phillip Schearer, was put on the witness stand and testified as a wit-

Schearer v. Harber.

ness in his own behalf; that while so on the witness stand he testified in his examination in chief, that he had sold the yoke of oxen in the complaint mentioned to the defendant, for the sum of one hundred and ten dollars; that upon his cross examination, he further testified that he had given evidence as a witness upon the former trial of said cause before Justice Creighton and a jury; that thereupon the defendant in further cross examination propounded to the plaintiff, then still on the witness stand, the following question, to wit: 'Did you not, upon the former trial of this case, before Justice Creighton and a jury, swear that the defendant, Harber, had never agreed to give you more than one hundred and five dollars for the oxen?' To which the plaintiff answered, 'no;' and thereupon the defendant propounded to the plaintiff, in further cross examination, the following question, to wit: 'Did you not, upon the same trial, swear that Harber never agreed to give you more than one hundred and five dollars for the oxen, but that you thought you ought to have one hundred and ten?' To which the plaintiff answered, 'no.'

"And be it further remembered that afterward in the further progress of said trial, the defendant put upon the witness stand as a witness Jacob Smith, who, being duly sworn, testified as a witness, as follows, to wit: 'I was present at the trial of this cause, before the magistrate, as a juror in the case.

"Inter. 'State whether the plaintiff, Schearer, swore on that trial, that Harber never agreed to give more than one hundred and five dollars for the cattle.' Answer. 'He testified that Harber never agreed to give more than one hundred and five dollars for the cattle.'

"Inter. 'State whether Mr. Schearer, upon the trial of that cause, also swore that Harber never agreed to give more than one hundred and five dollars, but that he thought he ought to have one hundred and ten.' Answer. 'Yes, he said he ought to have one hundred and ten dollars for the oxen, but that Harber never agreed to give over one hundred and five.'

"Cross examination. 'Mr. Schearer testified on that trial, in the German language, and it was given to the jurors by an interpreter. I do not understand or speak German; the only knowledge I have of what he said is what the interpreter told us.'

"And thereupon, the plaintiff, by counsel, objected to the introduction of said testimony, of the said witness, given on his examination in chief, and moved to strike out the same, on the ground that it was incompetent and immaterial, and mere hearsay; and on the further ground that said interpreter had not been produced or offered or proposed to be offered as a witness, or his absence explained or accounted for, which was the fact. But the court held that the evidence objected to was competent as offered; that it was not necessary before or after offering the same to offer, or account for the absence of the said interpreter, and thereupon overruled the plaintiff's objection to the said evidence, and his motion to strike out the same, to all of which the plaintiff excepted at the time. And the plaintiff thereupon notified the court that he intended to take said question of law to the Supreme Court, upon bill of exceptions only.

"And be it further remembered, that in the course of the trial of said cause before the jury, the defendant claimed as a fact, and offered evidence tending to prove, that he had bought said oxen in the complaint mentioned, for the sum of one hundred and five dollars, and that he had paid the plaintiff said sum of one hundred and five dollars on the same before the commencement of this suit; that the plaintiff claimed as a fact, and offered evidence tending to prove, that he had sold said oxen to the defendant for one hundred and ten dollars, but he admitted as a fact, and in his testimony as a witness, that the defendant had paid him one hundred and five dollars upon the purchase of said oxen before the commencement of this suit; that the plaintiff also claimed as a fact that there had been a misunderstanding between himself and the defendant at the time of said sale, as to the price of said oxen; that he and the defendant had never really agreed

upon any price, and that therefore he was entitled to recover the value of said oxen at the time of said sale, less the amount of one hundred and five dollars, which had been paid on them before suit; that he offered evidence tending to prove that said oxen were, at the time of said sale, worth one hundred and seventeen dollars; that it was upon this latter claim that the plaintiff relied in the final submission of his cause to the jury; and that the court charged the jury, amongst other things, that if they found from the evidence that the parties never did agree as to the price of the oxen, and that the defendant, with the plaintiff's consent, took and kept the oxen as his own, they should find for the plaintiff what the evidence showed the oxen to have been worth at the time of the sale, less the amount which had been paid thereon."

The bill of exceptions further shows that the plaintiff moved for a new trial and filed written reasons therefor, amongst which is the overruling of the objection of the plaintiff to the evidence of Jacob Smith as given on the trial, and the overruling of his motion to strike the same out; that the court overruled the motion for a new trial, and that the plaintiff excepted.

Error is assigned upon the overruling of the motion for a new trial.

The first question that arises in the case is one of jurisdiction. The counsel for the appellee insist that no appeal lies to this court in the case, inasmuch as no such appeal lies in actions originating before justices of the peace where the amount in controversy, exclusive of interest and cost, does not exceed the sum of ten dollars. 2 G. & H. 269, sec. 550. If we are to look to the pleadings alone to determine the amount in controversy, the whole sum claimed by the appellant, viz.: the sum of one hundred and ten dollars, is in controversy, as there was a judgment for the defendant. The plaintiff claimed that amount and recovered none of it, and it would seem to follow that that amount is in controversy. On the other hand, if we may look to what transpired on the

trial, including the evidence, to determine the amount in controversy, we learn by the bill of exceptions that the plaintiff claimed as a fact that there had been a misunderstanding between himself and the defendant, at the time of the sale, as to the price of the oxen, and that he and the defendant had never really agreed upon any price, and therefore that he was entitled to recover the value of the oxen at the time of the sale, less the one hundred and five dollars that had been paid thereon; and he offered evidence tending to show that the oxen were worth one hundred and seventeen dollars, and the court charged the jury that if they found that the parties had not agreed as to the price of the oxen, and that the defendant, with the plaintiff's consent, took and kept them as his own, they should find for the plaintiff what the evidence showed the oxen to have been worth at the time of the sale, less the amount that had been paid thereon, which was admitted to have been the sum of one hundred and five dollars, and not claimed to have been any more. Hence, in any view which we can take of the case, there seems to be more in controversy than the sum of ten dollars, exclusive of interest and cost.

The appeal is well taken.

We come to the main question in the cause. Was the testimony of Jacob Smith competent? We have seen by the bill of exceptions that the plaintiff, in testifying before the justice, employed the German language, and that Smith neither spoke nor understood that language. All he professed to know of the plaintiff's testimony on the trial before the justice, was from the interpretation of that testimony, rendered to the jury on that trial. In what relation does an interpreter, appointed by the court to interpret the testimony of a party or other witness in a cause, stand to the party whose testimony is to be interpreted? Is the interpreter to be deemed the agent of the party interpreted? The statute provides simply, that "interpreters may be sworn to interpret truly whenever necessary." 2 G. & H. 167, sec. 237.

It is quite clear that an interpreter so appointed is not

Schearer *v.* Harber.

thereby made the agent of the party whose testimony is to be interpreted. The court may swear any fit person as an interpreter without the consent of the party whose testimony is to be interpreted, or against his wishes. It does not appear that the interpreter appointed to interpret the appellant's testimony before the justice of the peace, was appointed at his instance, or even with his consent. The case, therefore, does not come within the principle that where one party has referred another to a third person for information, or where one party has made statements to another through an interpreter of his own selection, the statements of the person so referred to, or of the interpreter so chosen, are competent evidence against the party, in the same manner as if he had made the statements himself. See 1 Greenl. Ev., secs. 182, 183.

The interpreter, on the trial of the cause before the justice, we may assume, was duly sworn, because the law required that he should be sworn. He translated what the appellant testified to in the German language into English, and in the latter language delivered it to the justice and the jury. To this extent the interpreter was a witness, and the case falls clearly within the rule that regulates the introduction of evidence of what a witness testified to on a former trial. The rule is, that such evidence is inadmissible unless the witness be dead, out of the jurisdiction, or is insane or sick, and unable to testify, or has been summoned, but appears to have been kept away by the adverse party. 1 Greenl. Ev., sec. 163.

There was no reason whatever shown why the interpreter could not be produced, and, therefore, there was no foundation laid for the introduction of evidence of what he swore to on the former trial; in other words, of the interpretation he gave of the plaintiff's evidence on that trial. The evidence, therefore, was incompetent, and should have been stricken out on the motion of the appellant, which seems to have been made as soon as it was ascertained that the wit-

ness Smith was testifying to what the interpreter said, instead of what the appellant said.

But it is insisted that the bill of exceptions does not exclude the presumption which may be indulged in support of the proceedings, that the interpreter was afterward called and sworn as to what the appellant stated on the former trial. If that were done, it would not render the evidence of the interpretation he gave of the appellant's testimony competent, nor purge the record of the error in the admission of that evidence.

Again, it is urged that the appeal is vexatious, and grows out of a litigous spirit, and that we should apply to the case the legal maxim "*de minimis non curat lex,*" and affirm the judgment below. However much we might be inclined to do so, we find a statute in our way, which allows an appeal to this court in actions originating before justices of the peace, where the amount in controversy, exclusive of interest and costs, exceeds ten dollars. Many of these little cases arising before justices of the peace involve as difficult questions as cases of more magnitude and importance, and take up the time of the court which could be better employed in the consideration of more important cases. But while the statute stands we must obey its behests, and pass upon questions presented, though the cases themselves be trifling and insignificant.

Again, it is urged that the judgment should be affirmed on the ground that the merits of the case have been fairly tried and determined.

But no court can correctly say that the merits of a case have been fairly tried and determined, where incompetent, and therefore illegal, evidence has been admitted upon such trial. The court cannot say that the illegal evidence had nothing to do in producing the result.

The bill of exceptions clearly presents the question as to the competency of the evidence of Smith, and, as we have seen, that evidence was incompetent.

The court below should have granted a new trial, with costs to abide the event of the suit.

The judgment of reversal heretofore pronounced is adhered to, and the petition for a rehearing overruled.

*R. S. Taylor,* for appellant.

*J. Colerick, W. G. Colerick,* and *H. Colerick,* for appellee.