# THE WABASH RAILROAD COMPANY v. MILLER.

[No. 19,195. Filed November 26, 1901. Rehearing denied March 13, 1902.]

EVIDENCE.—*Testimony of Witness at Former Trial.—Stenographer.*— Where a witness at a former trial remains competent and qualified, a resident of an adjoining county, temporarily absent from the State, and no diligence has been shown to procure his depo-

sition or secure his personal attendance, it is not proper to permit a stenographer to testify in the trial of the cause as to what the absent witness swore to at the former trial.  *pp. 175–184.*

RAILROADS.—*Fires.—Evidence.*—In an action against a railroad company for damages sustained from fire escaping from its right of way, evidence was properly admitted concerning the condition of the right of way with respect to combustible materials upon it in the locality, but at other like places, and also concerning fires occurring on the right of way in the locality, but at other times and places, recently before and after that sued for.  *p. 184.*

From Adams Circuit Court; *D. D. Heller,* Judge.

Action by Sebastian Miller against the Wabash Railroad Company for damages from fire escaping from defendant's right of way. From a judgment for plaintiff, defendant appeals. *Reversed.*

*W. V. Stuart, E. P. Hammond, D. W. Simms, A. Zollars, C. H. Worden* and *F. E. Zollars,* for appellant.

*Henry Colerick,* for appellee.

HADLEY, J.—This cause comes to us from the Appellate Court under the provision of §1362 Burns 1894, with a recommendation that we "modify and give a broader application" to the rule of evidence which seems to be declared in *Hobson* v. *Doe,* 2 Blackf. 308, and apparently approved in *Rooker* v. *Parsley,* 72 Ind. 497, and *Woollen* v. *Whitacre,* 91 Ind. 502. See, *Wabash R. Co.* v. *Miller,* 27 Ind. App. 180.

This is a second appeal. The suit was commenced in Allen county. The opinion of the Appellate Court reversing the judgment rendered at the first trial was certified to the superior court of Allen county on the 8th day of February, 1898. It was spread of record in said superior court March 12, 1898. On November 14, 1898, the venue was changed to the Adams Circuit Court. A transcript of the case was filed in the latter court November 29, 1898. On February 18, 1899, the case was set down for trial on the seventh Tuesday of the then running term, which fell on March 21, 1899, and the trial was entered upon on that day.

One Brackenridge testified as a witness upon the first trial, and his testimony was taken in shorthand by the court's sworn stenographer. As introductory to the offer of the testimony of Brackenridge given upon the formal trial, as noted by the stenographer, Henry Colerick, one of appellee's attorneys, and a resident of Fort Wayne, testified as follows: "Charles S. Brackenridge was a witness at the former trial. The evidence of the former trial was taken in shorthand by the official reporter of that court, Miss Ritter. Mr. Brackenridge, for the last ten months or a year has been in the state of Texas, surveying a new railroad line in a sparsely settled portion of the state of Texas. After the setting of this case for trial, I made inquiry among the relatives and friends of Mr. Brackenridge for the purpose of reaching him by letter. He is a relative of my family. I was unable to obtain his post-office address, because of its varied character, and for that reason was unable to locate him." Upon cross-examination Mr. Colerick testified as follows: "Q. This case was set for trial on the 18th day of February, 1899, or the 1st day of March, 1899, wasn't it? A. I don't know exactly as to the first date, but I believe it was just as you say. Q. Prior to that you had made no inquiry? A. I had seen Mr. Brackenridge. I had talked with him some two or three months before that, as that is in answer to the question. I didn't know where he was. I knew he was in the state of Texas, but from the description of the work he was doing, and the character of the land he was going through,—almost unbroken state of the country through which they were surveying the road,—I didn't know the location. Q. Where was he when you saw him? A. In the city of Fort Wayne. Q. This case at that time was pending, was it not? A. This case was pending, but whether it was before the change of venue or after, I can't tell you. Q. It was either the Allen Superior Court or the Adams Circuit Court? A. Yes, sir." Mr. Colerick continuing: "And I desire to state that the issues joined in this

case are the same identical issues that were joined at the time of the rendition of Mr. Brackenridge's evidence on the former trial; and I desire to add that the action then, when such evidence was rendered, was between the same identical parties that this case is between, and that it is the same identical case."

Catherine Ritter then testified that she, as the official reporter of the superior court of Allen county, reported the evidence given at the former trial, and that Charles S. Brackenridge testified at that trial; that she made a short-hand report of his testimony, which report she had with her. She was then asked by appellee's attorney to "read the questions propounded to which answers were made, and the answers made thereto by Brackenridge as such witness on such former trial." Over the objection of the defendant, on the grounds that it appeared that the witness was still living, and the proper diligence to procure his testimony had not been shown, the witness was permitted to read in evidence what purported to be the testimony of Brackenridge at the former trial. The action of the court in permitting the notes of the stenographer to be read to the jury as evidence is vigorously assailed.

It is argued by appellant that whatever may be said of the correctness and scope of the rule as stated in *Hobson* v. *Doe,* 2 Blackf. 308, and apparently followed in *Rooker* v. *Parsley,* 72 Ind. 497, and *Woollen* v. *Whitacre,* 91 Ind. 502, it cannot in any event be extended to meet the facts of this case. And so it may be said that the real question presented is not so much the soundness of the doctrine indicated by the Hobson case, as whether the most liberal view of the rule will bring these facts within its operation. We have before us a record showing that after the reversal of the former judgment by the Appellate Court the cause was pending for a retrial in Allen and Adams counties for more than three years before the last trial. The absent witness,

Brackenridge, is still living, a competent witness, and a resident of the city of Fort Wayne, which is situate in a county adjoining Adams. Ten or twelve months next before the last trial Brackenridge had been in the state of Texas, surveying a railroad in a sparsely settled country; but two or three months before the case was set for trial he was back in Fort Wayne, and was seen and conversed with by appellee's attorney. After the case was, on February 18, 1899, set for trial, appellee's attorney inquired of Brackenridge's relatives and friends for his post-office address, for the purpose of reaching him with a letter, but was unable to locate him or learn his post-office address. Two days before the last trial appellee's attorney caused a subpoena for Brackenridge to issue, as a matter of form, and when he knew the witness was absent from the State.

From this it appears that Brackenridge was present in Fort Wayne at least two years after the return of the case from the Appellate Court before he went to Texas, and in the absent period, and but two or three months before the trial, he was back in Fort Wayne, conversing with appellee's attorney; and none of the following facts are shown: (a) That appellee did not timely know that Brackenridge was going to Texas, and was liable to be absent at the time of trial; (b) that, during the presence of the witness in Fort Wayne, shortly before the trial, appellee did not know that witness intended soon to return to Texas; (c) any reason why the witness' deposition was not taken; (d) how soon it was after the case was set for trial that appellee's attorney inquired of the witness' relatives and friends about his post-office address; (e) whether the inquiry was made of those relatives and friends who were likely to know; (f) whether appellee or his attorney knew the employer of Brackenridge, or where such employer resided, or whether inquiry was made of him; (g) whether a letter was addressed to the witness' last known post-office address.

The admissibility of such evidence constitutes an excep-

tion to the general rule of exclusion of hearsay evidence, and rests upon a kind of legal necessity, springing from an apparent impossibility or impracticability of procuring the testimony of the person from whom the information emanates.   It is therefore incumbent upon the party offering such testimony to show affirmatively the existence of all facts necessary to the bringing of the secondary evidence clearly within the exception, and unless this is done the evidence should be excluded.   This is not a case where the absent witness has died, or has become disqualified since the former trial by insanity or other disability.   Neither is it a case where the witness is now beyond the seas, or has become a non-resident of the State, or absents himself by procurement of the opposite party; and so none of the many cases cited, and in the books treating of such instances, can be accepted as controlling in the case at bar.   Our proposition involves a case where the witness remains competent and qualified, a resident of an adjoining county, temporarily absent from the State, and where no diligence has been shown to procure his deposition, or secure his personal attendance upon the court.   Under such circumstances, was it proper to permit a stenographer to testify as to what the absent witness swore to on a former trial of the case, had more than three years before?   It is proper to observe that we have no statute which gives legal value to the shorthand notes of an official stenographer in a subsequent trial of the same case, and when such stenographer reads his notes, or refreshes his recollection thereby, he is, in legal effect, doing nothing more nor less, than repeating, to the best of his ability, what the witness said in his presence.   Such evidence, as a rule, is doubtless more reliable than when the witness depends solely upon his recollection, or upon hastily prepared memoranda; but it can not be said that stenography has progressed to that state of perfection where there may be an absolutely accurate reproduction of all the words of a witness, from notes made in the usual course of trials.   In

principle, the reading from shorthand notes of what another said is the same as reading from a contemporaneous memorandum, or reciting from memory what he said. It is, at best, hearsay in either case, and its worthiness only a matter of degree. If, then, we should adopt the rule contended for, and make the stenographer a competent witness, not because the law makes him competent by reason of his skill, but because he claims to be able to repeat what the witness testified to upon the former trial, why should we not extend the rule to all persons who claim to be able, from recollection or memorandum, to do the same thing? And if, for reasons of convenience and economy, the testimony of the former is to be received without a showing of diligence to procure the testimony direct from the original witness, when such original witness is not within reach of the process of the court, what further need can there be for litigants to bother themselves about procuring the attendance, or deposition of witnesses who have once testified in the case, and who at the subsequent trial are found to be beyond the reach of the court's subpœna? We are not prepared to go to the extent to which this insistence would lead us.

It is suggested that since the employment of stenographers in court, and where testimony, which has been sifted and its truth tested by a cross-examination under the supervision of the court, has been preserved by it, the reasons previously existing for diligence in procuring the evidence direct from the original witness for use upon a retrial have ceased to exist, and that evidence so preserved can no longer be looked upon with mistrust. But the suggestion does not go to the bottom of the question. A witness may be never more honest in giving his testimony, yet, after the lapse of time and an increase of knowledge, he may desire to modify or altogether change the statements made by him as a witness in the case; and the adverse party may desire to cross-examine the witness more at length, or upon new points, and may be able thereby to change materially the probative

force of the testimony previously given; and 'grounds for the successful impeachment of the witness may be discovered after the former trial, which should be made available, by presenting to the adversary an opportunity to lay the foundation. These and other like reasons are not affected by the art of stenography, however perfect it is, or may become. It is clearly the duty of a court, when engaged in the administration of justice, to see to it that the best and most reliable evidence obtainable is brought before it; and this can only be accomplished by requiring, as far as reasonably possible, the examination of witnesses from the stock of knowledge possessed by them and the parties at the time of the trial. The facts here present a·good illustration. About four years intervened between the first and second trial. On the first Brackenridge testified concerning the effect of fire upon muck soil. There was much conflict in the testimony of the witnesses upon the point; some maintaining that burning improved the productiveness of such soils, and others maintaining that it was ruined thereby. Brackenridge was of the latter class. This is the most important issue in the case, and involves a fact over which neighbors earnestly disputed. Knowledge upon the point can be obtained by a scientific test, and quite as accurately by experience and observation. Whether additional experience and observation in varying seasons has modified the view expressed by the witness four years before was a proper subject of inquiry.

We see no sufficient reason for relaxing the common law rule now under consideration, in favor of the admission of the testimony of an absent witness, merely because it was taken down by a sworn stenographer. The more difficult question is to determine the limits of the rule. At first blush the decisions of this court would seem to be inharmonious, but a closer study of the cases leads to the conclusion that there is no necessary conflict.

In *Hobson* v. *Doe,* 2 Blackf. 308, decided in 1830, the

entire reported opinion is as follows: "A party is not permitted to prove what one of his witnesses swore to on a former trial of the cause, until he has proved that the witness is dead." Assuming, as we may, that the witness referred to in that case was, in fact, dead, and his death being the ground upon which the proffered testimony was predicated, it was very correctly said by the court that the evidence could not be received until the foundation of the right to it had been proved.

In *Rooker* v. *Parsley,* 72 Ind. 497, this court said, in commenting upon the circuit court's refusal to hear further evidence as to the death of a witness upon a former trial: "The court seems to have acted upon the theory that the question of Beck's death was entirely immaterial, and in this the court was plainly in error. Beck's death was material, because upon that question depended the right of appellant to give the evidence of statements made by him upon the former trial."

What was said in *Woollen* v. *Whitacre,* 91 Ind. 502, was with respect to the refusal of the lower court to allow the plaintiff to contradict the defendant by proving what one of the defendant's witnesses had sworn to upon a former trial. The language used is, "We know of no rule that will admit the evidence given at a former trial of a witness not deceased, and who is not a party to the suit, except for the purpose of impeachment."

These words, employed in argument, neither affirm nor deny a legal principle. They decide nothing as to this question; and it is that which is decided, and not that which is said, that constitutes a legal precedent. The strength of judicial decisions must be determined by the facts upon which they rest, and, thus tested, there is nothing in the Hobson and Rooker cases that necessarily limits the application of the rule to cases wherein it is shown that the absent witness is dead. That this court has so construed these two cases is apparent from what is said in *Schearer* v. *Harber,*

36 Ind. 536, decided in 1871, to wit: "The rule is, that such evidence is inadmissible unless the witness be dead, out of the jurisdiction, or is insane or sick, and unable to testify, or has been summoned, but appears to have been kept away by the adverse party." In this last case there was no reason shown why the original witness was not produced at the trial, or where he was, and "therefore", continues the court, "there was no foundation laid for the introduction of evidence of what he swore to on the former trial; * * * . The evidence, therefore, was incompetent, and should have been stricken out on motion." We find no reason for disapproving or for modifying the decision in either of the cases recommended.

It remains to be seen whether the rule is applicable to the facts of this case. The witness Brackenridge was a resident of Fort Wayne, but temporarily absent from the State, —that is to say, as a resident he was within the jurisdiction of the court and subject to its process, but at the second trial he was temporarily away from home and no diligence has been shown to bring him or his testimony before the court. It must be said that the weight of authority goes to the effect that in civil cases the testimony of one witness cannot be given in evidence by another in a subsequent trial of the same case, until it is made to appear that the original witness is dead, or is insane, or otherwise so physically disabled that by the exercise of due diligence his deposition could not have been taken, or that the witness is a non-resident of the State, or that he is absent from his residence, and his whereabouts cannot, by due diligence, be ascertained, or that he has absented himself by the procurement of the opposite party. *Schearer* v. *Harber,* 36 Ind. 536; *Kirchner* v. *Laughlin,* 5 N. M. 365; *Berney* v. *Mitchell,* 34 N. J. L. 337; *Gerhauser* v. *North British, etc., Ins. Co.,* 7 Nev. 174, 188; *Cassady* v. *Trustees,* 105 Ill. 560, 567; *Cook* v. *Stout,* 47 Ill. 530; *Kellogg* v. *Secord,* 42 Mich. 318, 3 N. W. 868; *Gastrell* v. *Phillips,* 64 Miss. 473, 1 South. 729; *Wilder* v.

*City of St. Paul,* 12 Minn. 192; *Baldwin* v. *St. Louis, etc., R. Co.,* 68 Iowa 37, 25 N. W. 918; *Slusser* v. *City of Burlington,* 47 Iowa 300.

While we have stated what seems to be the trend of judicial decision, the case at bar does not commit us to any special rule, further than to maintain, as we do, that where a witness is only temporarily absent from the State, and was at his home within the State, and within the county where both litigants resided, with the knowledge of the party desiring his evidence, when and where his deposition might have been taken, at a time shortly before the trial, and where it is shown that no diligence was used to procure his deposition or personal attendance upon the court, proof of what such witness swore to upon a former trial is inadmissible.

II.    The defendant is charged in the complaint with negligence in permitting combustible and inflammable material to accumulate and remain upon its right of way, and, after fire had started therein, with negligence in permitting it to escape to the plaintiff's premises. There was evidence introduced tending to show that the fire started on the right of way soon after the passing of a locomotive. The court, then, over the defendant's objection, permitted witnesses to testify concerning the condition of the right of way with respect to dry grass and weeds and other combustible materials upon it in the locality, but at other like places, and also concerning other fires occurring on the right of way in the locality, but at other times and places, recently before and after that sued for. This action of the court is complained of. It is insisted that evidence of other fires may be properly received only in those cases where the negligence charged relates to the equipment of locomotives or management of trains. That this position cannot be sustained is fully shown by what was said in *Pittsburgh, etc., R. Co.* v. *Indiana Horseshoe Co.,* 154 Ind. 322.

For error of the court in permitting the stenographer to

read to the jury what purported to be the testimony of the witness, Brackenridge, upon a former trial, the judgment must be reversed.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.