Rhodes *v.* The State.

---◆---

128  189
131  569
132   69
133  690

128  189
139  624

128  189
140  301

128  189
148  248
151  257
151  258
152   72

128  189
155  278
155  279

128  189
165   96

No. 15,661.

RHODES *v.* THE STATE.

CRIMINAL LAW.—*Abortion.—Sufficiency of Indictment.*—An indictment for criminal abortion charging that an instrument was feloniously introduced into the womb of a pregnant woman, with the intent to produce a miscarriage, such operation not being necessary to save the woman's life, is sufficient without showing what kind of a wound it produced or what disease it caused.

SAME.—*Indictment.*—The indictment was not bad because it showed both miscarriage and death.

SAME.—*Duplicity.—Charging Accessory.*—The indictment was not bad for duplicity because it charged an accessory before the fact as principal.

SAME.—*Evidence.—Declarations in Last Illness.*—Declarations and exclamations indicative of pain or suffering, made by the woman in her last illness, and not referring to the past, are competent evidence.

SAME.—*Witness.—Impeachment.*—Where the State is neither surprised nor prejudiced by the testimony of a witness called by it, it may not contradict such witness by evidence of contradictory statements made out of court.

SAME.—*Evidence.*—It was not competent for the State to show that the woman, upon whom the abortion was produced, was buried at the expense of the county.

SAME.—*Instruction.—Reasonable Doubt.*—In a case where the evidence of

Rhodes v. The State.

guilt is purely circumstantial an instruction that "The defendant is to have the benefit of any doubt. If, however, all the facts established necessarily lead the mind to the conclusion that he is guilty, though there is a bare possibility that he may be innocent, you should find him guilty," is erroneous.

JUROR.—*Competency of.*—*Defective Eyesight.*—A juror whose eyesight is so defective that he can not see the expression of the faces of the witnesses, nor observe their deportment or demeanor, is not competent, especially where various articles illustrative of the testimony are placed before the jury.

SAME.—The defendant was not negligent where his counsel fully examined the juror as to his qualification, and there was nothing in his answers to indicate that his eyesight was defective.

From the Tippecanoe Circuit Court.

*W. P. Rhodes, R. P. De Hart, A. L. Kumler* and *T. F. Gaylord,* for appellant.

*A. G. Smith,* Attorney General, and *G. P. Haywood,* Prosecuting Attorney, for the State.

ELLIOTT, J.—The indictment upon which the appellant was convicted charges him with having feloniously introduced an instrument into the womb of a pregnant woman with the intent to produce a miscarriage.

The appellant's counsel insist that the court erred in overruling the motion to quash the indictment, and allege several objections, but all of them are without substantial merit. It is said that the indictment is bad because it does not show that the woman miscarried or died, but this point is not supported by the record, for it does appear that there was a miscarriage and death.   Good pleading does not require any such particularity as counsel insist upon.   It is sufficient, in such a case as this, to charge that an instrument was feloniously introduced into the womb of a pregnant woman, without showing what kind of a wound it produced or what disease it caused.   Where the felonious use of an instrument is shown, and it appears, as it does here, that the operation was not necessary to save the woman's life, it is not incum-

bent upon the State to go further and describe the nature of the wound, or the character of the disease which resulted.

The objection that the indictment is bad because it shows both miscarriage and death has not even the poor merit of plausibility.

The indictment is not bad for duplicity. An accessory before the fact may be charged as a principal.

The other questions in the case arise on the ruling denying the motion for a new trial.

Complaint is made of the ruling of the court in admitting the declarations and exclamations of the woman upon whom the abortion was committed, but the complaint is groundless. The declarations and exclamations were indicative of pain and suffering, were made by the woman in her last illness, and they did not refer to the past. They were clearly competent. *Board, etc.*, v. *Leggett*, 115 Ind. 544, and authorities cited.

Dr. Smith was called as a witness by the State, and, so far as we can discover, gave no testimony different from that which the State required and expected from him. There is nothing in the record indicating that the State was surprised by his testimony, or that it was regarded as prejudicial. It is true that the witness said, in a general way, that the woman was suffering from a malarial fever, but he was not, when originally called, asked by the State as to whether there were symptoms indicating an attempt to produce an abortion. The testimony of the witness was strongly favorable to the State in one particular, inasmuch as it tended to show the appellant's intimacy with the woman upon whom the instrument was used. After the witness left the stand, and near the close of the case, he was recalled, and the counsel for the State addressed to him this question : " Did not Mrs. Chapman ask you ' what in the world is the matter with her,' and did you not reply ' I don't know ; whatever she has done, or has been done, or whatever she has taken, is the cause of the sickness and will be the cause of her death.' " Subsequently

Mrs. Chapman was called, and she testified that Dr. Smith was asked by her the question embodied in the interrogatory propounded by the State, and that he answered it as stated in the interrogatory.    It is no doubt true that the State may, in the proper case, contradict its witnesses by evidence of contradictory statements made out of court.    *Conway* v. *State*, 118 Ind. 482.    Justly limited and rightfully applied, the statutory rule is a wise and salutary one; but if not properly limited and employed it may be very unjust and mischievous.    If a party may call a witness, elicit from him only what is expected, and what is not prejudicial, and then prove statements made out of court by the witness, great harm may be done the adverse party.    It happens, as the decisions and the books show, that witnesses make careless or reckless statements out of court, which they will not make under oath, and such statements ought not to be brought out by the party who produces the witness unless the testimony of the witness is prejudicial to him.    It is, indeed, doubtful whether they can be brought out where there was no obligation on the party to call the witness, and the testimony was what the party knew, or had reason to believe, the witness would give.    It is true that evidence of such statements is theoretically evidence affecting credibility only, and is not evidence of the facts embraced in the contradictory statements; but, nevertheless, evidence of contradictory statements does often influence the jury.    The limitation placed upon the statutory rule by the decisions is a wise one.    That limitation is this:    Where the witness gives no prejudicial testimony upon the point to which the contradictory statements relate, evidence of statements made out of court is not competent.    Where the party calling the witness is surprised by his testimony, or where it is prejudicial, then contradictory statements as to the point upon which the evidence is prejudicial is competent, otherwise not.    *Hull* v. *State, ex rel.*, 93 Ind. 128 ;    *Conway* v. *State, supra*, and cases cited ;    *Miller* v. *Cook*, 124 Ind. 101.    In the case last cited

Rhodes v. The State.

it was rightly held that the contradictory statements must relate to the point upon which the evidence is prejudicial, and so we hold here.    While we incline to the opinion that the contradictory statements were improperly admitted in evidence, still we should be unwilling to reverse the judgment for the error, if it was one, for the reason that we think that the erroneous ruling, conceding it to be such, could not possibly have affected the result.

We are unable to perceive upon what ground the ruling of the court permitting the State to show that the woman upon whom the abortion was produced was buried at the expense of the county can be sustained.    The evidence was not competent, but for the error in admitting it, if there were no other errors in the record, we should not be inclined to reverse the judgment.

The evidence that some one did use means to produce an abortion upon the woman named in the indictment is sufficiently clear and satisfactory to warrant the inference of guilt.    There are circumstances tending to prove that the accused either used the instrument himself or caused some other person to use it.    The criminating circumstances are, we repeat, such as warrant the inference of guilt, but they do not absolutely require it.

The evidence upon the material point as to who actually used, or caused to be used, the instrument by which the miscarriage was produced was wholly and purely circumstantial. The case is not, therefore, one in which we can say that a mistake in defining a reasonable doubt or an error in charging the law upon the subject of a reasonable doubt will not compel a reversal of the judgment.    If the case were one of direct and satisfactory evidence, or one where the circumstantial evidence was so convincing and clear that we could say without hesitation that the verdict was right, possibly we might affirm the judgment of conviction under the rule laid down in *Heyl* v. *State*, 109 Ind. 589, even though the

Rhodes v. The State.

instructions are not entirely satisfactory. We are, however, required to decide whether the instructions given upon the subject of reasonable doubt are correct as applied to a case where the evidence of guilt is purely circumstantial.

The settled rule is that instructions upon a single subject must be considered together, and not in 'fragmentary parts, and, if thus considered, they correctly declare the law they will not be overthrown, even though detached or isolated parts may not be accurate or clear. If, therefore, the series of instructions upon the subject of reasonable doubt, considered as a whole, are not erroneous, the attack of appellant's counsel must fail. In obedience to the settled rule that all of the instructions must be considered, we group those instructions and consider them as an entirety. They read thus:

"3. The defendant is presumed to be innocent, and before he can be convicted the State must prove him guilty beyond a reasonable doubt.

"4. A reasonable doubt arises when the evidence is not sufficient to satisfy the minds of a jury to a moral or reasonable certainty of the defendant's guilt. A reasonable doubt is not an unreasonable doubt—it is a doubt for which a reason can be given. It is not a mere surmise or guess that the defendant may not be guilty of what he is charged.

"5. The defendant is to have the benefit of any doubt. If, however, all the facts established necessarily lead the mind to the conclusion that he is guilty, though there is a bare possibility that he may be innocent, you should find him guilty."

No one of these instructions fully informs the jury of the weight of evidence required to produce the moral certainty which is essential to a conviction of a felony. No one of them gives the test by which to measure the evidence; at all events, no such test is given as is required by the decisions in the cases of *Bradley* v. *State*, 31 Ind. 492 (505) ; *Jarrell* v. *State*, 58 Ind. 293 (297) ; *Knight* v. *State*, 70 Ind. 375 ; *Gar-*

Rhodes v. The State.

*field* v. *State*, 74 Ind. 60; *Behymer* v. *State*, 95 Ind. 140; *Brown* v. *State*, 105 Ind. 385; *Farley* v. *State*, 127 Ind. 419. But we could possibly sustain the instructions, notwithstanding this defect or omission, inasmuch as no specific instructions were asked by the appellant, if there were no affirmative errors in them.

The drift of the entire series upon the essential point, what constitutes a reasonable doubt, is unfavorable to the accused. The jury are repeatedly told what does not constitute a reasonable doubt, but they are not informed what does constitute such a doubt. If, therefore, there are statements directly against the accused they must be regarded as prejudicial, and, if erroneous, we must reverse the judgment. The fifth instruction declares that "If all the facts established necessarily lead the mind to the conclusion that he is guilty, though there is a bare possibility that he may be innocent, you should find him guilty." This is not the law. It is not enough that the evidence necessarily leads the mind to a conclusion, for it must be such as to exclude a reasonable doubt. Men may feel that a conclusion is necessarily required, and yet not feel assured beyond a reasonable doubt that it is a correct conclusion. Life and liberty can not be taken where evidence does no more than necessarily lead to a given conclusion. Jurors must act freely and without compulsion in deciding against life or liberty, for so say the decisions upon the subject. The evidence must lead to the conclusion so clearly and strongly in a case like this, where the evidence is purely circumstantial, as to exclude every reasonable hypothesis consistent with innocence. It is, however, not necessary that the evidence should produce absolute certainty in the minds of the jurors, or that it should dissipate mere conjectures and speculative doubts. *Kennedy* v. *State*, 107 Ind. 144. The law as declared by an eminent author, and approved in *Sumner* v. *State*, 5 Blackf. 579, is this: " On the one hand, absolute, metaphysical, and demonstrative certainty, is not essential to proof by circumstances. It is suffi-

cient if they produce moral certainty to the exclusion of every reasonable doubt." Professor Greenleaf says: "Neither a preponderance of evidence, nor any weight of preponderant evidence, is sufficient for the purpose, unless it generate full belief of the fact, to the exclusion of all reasonable doubt." 3 Greenl. Ev. (14th ed.), section 29. It is often true that a preponderance of the evidence will necessarily lead the mind to a conclusion, but where human life or liberty is at stake, reasonable doubt must be removed, and the removal of reasonable doubt is not always essential to a necessary conclusion. A necessary conclusion may logically appear to result, and yet all reasonable doubt be not removed. We do not hold the instruction erroneous because of its statement as to the effect of the bare possibility of innocence, but because it directs the jury that "if the facts established necessarily lead the mind to the conclusion" that the accused is guilty they must convict him.

It is very doubtful whether the statement that the doubt " must be one for which a reason can be given," is correct, but as to that we give no opinion. Carr v. State, 23 Neb. 749; Cowan v. State, 22 Neb. 519.

One of the jurors made affidavit that his eyesight was so defective that he was unable " to distinguish, one from another, of the faces of the witnesses, that he did not see the face of the defendant, and that he did not see the expressions of the witnesses testifying nor observe their deportment or demeanor." We think that the juror was not competent to sit even in cases where the testimony consists entirely of the statements of the witnesses. Again and again have verdicts been allowed to stand because of the effect declared to be exerted by the demeanor and deportment of witnesses, and surely no one who can not see the expression of faces, nor observe deportment and demeanor, can justly weigh testimony. But in this instance various articles were placed before the jury and used as illustrative of the testimony, none of which was seen by the juror. Clearly his un-

fortunate infirmity incapacitated him from properly observing the evidence.

The accused was not negligent, for he, by his counsel, fully examined the jurors as to their qualifications. The answers of the juror of whom we are speaking were such as to disarm suspicion of his disqualification, and there was nothing to indicate that his eyesight was defective.

The State insists that a circumstance which occurred during the trial ought to have warned the defendant's counsel of the juror's infirmity. But we think otherwise. The circumstance was not such as to make it the duty of counsel to note it, and ask for another jury. Counsel, by sworn statements, declare that they did not observe it, and we see nothing in the occurrence to justify the inference that they did observe the juror's infirmity. Nor are they contradicted, for the utmost that can be said of the counter-affidavits is that the affiants believed that counsel did note what occurred.

The judgment is reversed, with instructions to sustain the appellant's motion for a new trial.

