### OLDFATHER *v.* ZENT.

[No. 2,590.   Filed December 20, 1898.]

APPEAL AND ERROR.—*Motion to Strike Out Evidence.—Practice.*—No question upon the action of the trial court in overruling a motion to strike out testimony can be considered, unless the record shows that a reason for striking out the testimony was pointed out to the court below as the ground of the motion, and also what reason was thus presented.   *pp. 307, 308.*

MALICIOUS PROSECUTION.—*Evidence.—Res Gestae.*—Where one of the items of damages claimed in an action for malicious prosecution is the loss of a contract of employment, a conversation between plaintiff and his employer at the time he surrendered his contract is admissible in evidence as a part of the *res gestae.   pp. 308, 309.*

WITNESS.—*Surprise.—Party May Question His Own Witness as to Previous Inconsistent Statements.*—Where a party is surprised by the testimony of his own witness, he may interrogate the witness in respect to his previous statements inconsistent with his present testimony, for the purpose of showing that he is incorrect in his testimony, and giving him an opportunity to explain the inconsistency. *pp. 309-312.*

From the Porter Circuit Court.   *Affirmed.*

*Wm. Johnston* and *J. S. Slick,* for appellant.

*Charles P. Drummond,* for appellee.

BLACK, C. J.—The appellee sued the appellant for malicious prosecution, and recovered judgment, which was reversed on appeal, the cause being remanded for a new trial. *Oldfather* v. *Zent,* 14 Ind. App. 89.   The venue was changed to the court below, where the complaint was amended, and issues were formed, which were tried by jury, and a general verdict for the appellee was returned.   The overruling of a motion for a new trial is alone assigned as error.

The appellant first presents for our consideration the overruling of his motion to strike out certain testimony.   The record shows that "counsel for defendant moved the court to strike out the testimony of the

plaintiff, concerning the contents of a written contract between himself (plaintiff) and the New York Life Insurance Company, which motion the court over-ruled, to which decision and ruling of the court the defendant, by counsel, then and there excepted." Upon looking into those portions of the record to which we have been referred by counsel, containing the testimony of the appellee, referred to in the motion to strike out, we find that the testimony in quesion, some upon examination in chief, and some upon cross-examination, introduced at another stage of the trial, and on a prior day, was admitted without objection. The motion does not state any ground of objection to the testimony, or reason for striking it out. If it properly can be said that in this motion the testimony in question is designated with sufficient definiteness, yet no question upon the action of the trial court in overruling a motion to strike out testimony can be considered, unless the record shows that a reason for striking out the testimony was pointed out to the court below as the ground of the motion, and also what reason was thus presented. *Bernhamer* v. *Dawson,* 124 Ind. 126; *McIlvain* v. *State, ex rel.,* 80 Ind. 69.

In the appellee's complaint it was stated, among the averments relating to damages, that, at the time of his arrest under the criminal prosecution (the particulars of the arrest being set forth), he was in business for the New York Life Insurance Company, working as its agent, under and by virtue of a special contract, by which he was to receive from said company, and was receiving from it, $300 per month at the time of his arrest; that his character and standing for honesty and integrity had theretofore been good; that by reason of the arrest, and of the serious charge made against him (which was alleged to be that of the crime of obtaining money under false pretenses), he became nervous,

prostrated, and sick in body, and so distressed in mind that he was compelled to remain at his house, and for that reason could give no attention to his business, and from the fact that his mind was so distressed and worried that he could not give any attention to his business, and as a consequence of such bodily illness, distress, and worry of mind, he was compelled to lose, abandon, and give up his contract with said company for a period of four months; that his time was worth during such period, and he would have received for such time, but for the wrong of the appellant, done him, the sum of $1,200. It appeared in evidence that one Frank B. Davenport was said company's supervisor for this State; that said contract was surrendered, and that the appellee had a conversation with Mr. Davenport in relation to giving up the contract. The appellee, testifying as a witness, was asked by his attorney to "state what Mr. Davenport said, and what you said, in reference to canceling that contract whereby you were to receive three hundred dollars per month for your services." The court overruled appellant's objection to this interrogatory, and this ruling was assigned as a cause for a new trial. The conversation about which the inquiry was made was had between the representative of the company and its agent, at the time of the discharge of the agent. It was material to show, not merely the surrender of the contract, but also the reason for the surrender. If the conversation which showed the discharge might also characterize the thing done, by indicating the reason for the discharge, this did not render the question to the witness improper; the language so giving character to the act being part of the res gestae.

George W. Ray, a witness produced by appellee, testified that he was a lawyer, and in December, 1889,

and January, 1890, was the prosecuting attorney for Kosciusko county, where the criminal prosecution was instituted against the appellee; that the appellant called to see the witness in December, 1889, and talked with him about the appellee and the transaction between him and the appellant; that thereupon the attorney wrote a letter to the appellee. The court would not permit this letter, which was identified by the witness, to be introduced in evidence. No exception was taken to this ruling, and no question is made before us relating to this action of the court, which appears, from a statement of the court on the trial, to have been based on the ground that the evidence did not sufficiently connect the appellant with the letter. Counsel for appellee, having reference to this letter, asked the witness Ray: "Why did you make this statement in the letter? 'Mr. S. W. Oldfather has placed in my hands for collection a certain judgment which he holds against you and Mr. L. B. Weaver.' Why did you make that statement in the letter to Mr. Zent?" To this question counsel for appellant objected, "on the ground that it is an effort to impeach a party's own witness, and on the further ground that it is not shown to have been authorized in any way by defendant in the case, or that he had any connection with it." The court overruled the objection, and the witness, after some pressing, admitted that the judgment was placed in his hands for "adjustment." Before being asked the question so objected to, he had testified that Mr. Oldfather had not placed the judgment in his hands for adjustment and collection. It appears from the record that the learned judge at the trial placed his rulings upon the ground that, the witness having disappointed the party calling him, it was competent thus to call his attention to his other conflicting statement. Counsel

have discussed the statute, section 515, Burns' R. S.
1894 (507, Horner's R. S. 1897), providing that "the
party producing a witness shall not be allowed to
impeach his credit by evidence of bad character, un-
less it was indispensable that the party should pro-
duce him, or in case of manifest surprise, when the
party shall have this right; but he may, in all cases,
contradict him by other evidence, and by showing that
he has made statements different from his present
testimony." The witness Ray had not testified to any
fact prejudicial to the appellee, but had merely failed
to testify as the appellee expected. The statutory
provision for proof of contradictory statements only
relieves a party in respect to prejudicial testimony
of his own witness. *Hull* v. *State, ex rel.*, 93 Ind. 128;
*Conway* v. *State*, 118 Ind. 482; *Miller* v. *Cook*, 124 Ind.
101; *Rhodes* v. *State*, 128 Ind. 189. But no inquiry is
raised here, as a question either under the statute or
at common law, as to whether it would have been
allowable to contradict the witness by introducing
in evidence the portion of the letter containing his
conflicting statement, after calling his attention
thereto. The letter was not admitted in evidence nor
was any part of its contents admitted, but the court,
in permitting such question, impressively indicated
that it was because the witness had merely disap-
pointed the party calling him, and for the purpose of
giving the witness an opportunity to make explana-
tion why he made the statement to which the inter-
rogatory related. It appears that the interrogatory
to the witness was not permitted for the purpose of
laying the foundation for the impeachment of the
witness by showing his contradictory statement, but
it was permitted as being allowable under a common
law rule of evidence,—that where a party is surprised
by the testimony of his own witness, he may inter-

rogate the witness in respect to his previous statements inconsistent with his present testimony, for the purpose of probing his recollection, and showing him that he is incorrect in his testimony, and giving him an opportunity to explain the inconsistency. Without any reference to any statutory provision on the subject, it cannot be regarded as a sufficient objection to such a course of examination that the answer of the witness, by reason of its contradiction of his testimony already given, may tend to weaken confidence in the memory or the truthfulness of the witness; this being, not the sole purpose and effect, but only an unavoidable incidental result in seeking by a reasonable and natural method to arrive at the truth, which should be the object of rules of evidence. Such a beneficial result appears to have followed in the case before us.  See *Bullard* v. *Pearsall*, 53 N. Y. 230; *Griffith* v. *State*, 90 Ala. 583; *Humble* v. *Shoemaker*, 70 Ia. 223, 30 N. W. 492; *Hildreth* v. *Aldrich*, 15 R. I. 163, 1 Atl. 249; *National Syrup Co.* v. *Carlson*, 42 Ill. App. 178; *McNerney* v. *Reading City*, 150 Pa. St. 611, 25 Atl. 57; *Hurley* v. *State*, 46 O. St. 320, 21 N. E. 645, 4 L. R. A. 161; *Walker* v. *State*, 136 Ind. 663.

The appellant assigned as causes in his motion for a new trial the admission of certain evidence, and the overruling of his motion to strike out the the same evidence.  Upon reference to the record, it appears that, while the court admitted the evidence in question, the appellant immediately thereafter made a motion to strike it out, which the court sustained, saying "I will strike it out for the present."  It seems sufficiently plain from the statement of the matter, that there was here no available error, as against the appellant.

We have been unable to find sufficient ground for disturbing the verdict in the criticisms of the appel-

lant relating to the instructions, or in any suggestion concerning the evidence or the amount of the damages. The judgment is affirmed.