ELGIN, JOLIET & EASTERN RAILWAY CO. *v.* COLLINS

[No. 968A156. Filed August 4, 1970. Rehearing denied September 18, 1970. Transfer denied December 29, 1970.]

*Paul Noland, Hackbert, Rooks, Pitts, Fullagar & Poust,* of counsel, of Chicago, Illinois, *John W. Barce, Barce, Barce & Vann,* of Kentland, *Peters, McHie, Enslen & Moran,* of Hammond, for appellant.

*Charles K. Whitted,* of Gary, for appellee.

WHITE, J.—This is an action for personal injuries brought by the plaintiff-appellee against the defendant-appellant (railroad) arising out of the collision of a truck and a freight train at a crossing in Lake County inside the United States Steel Plant on August 3, 1964. The plaintiff, a plant employee, was a passenger in the truck, being transported within the plant in the course of his employment. His amended complaint alleged, and the evidence apparently convinced the jury, that the railroad negligently caused the collision by operating an unlighted string of cars, not preceded by an

engine, across an unlighted crossing at night without keeping any proper lookout and without giving any kind of warning signal. The jury returned a verdict of $36,000.00 for the plaintiff. No question is raised as to the sufficiency of the amended complaint or of the evidence to sustain its allegations. The motion for new trial did raise questions as to the admissibility of certain evidence. The overruling of that motion is defendant-appellant's sole assignment of error.

The first assertion of error concerns the plaintiff's reading to the jury the complete transcriptions of the extra-judicial statements of Brodie Sumler, James Block, and Lehman Webb made to, and recorded by, the railroad's claim agent during early investigation of the accident. These men, plaintiff's fellow workers, were also in the truck at the time of the accident and testified at the trial as witnesses for plaintiff. Defendant-appellant, in cross-examining them, asked about things they had said in those statements in an attempt to show that such partial statements were inconsistent with their testimony regarding the same matters. On redirect examination plaintiff was permitted, over appellant's objection, to introduce the transcripts of those recorded statements in their entirety. The railroad objected on the ground that a witness may not be rehabilitated on redirect examination by reference to new material but only by reference to material which explains or modifies the impeaching statement. The entire statements of the three witnesses admitted by the court contained much new matter and, also, many opinions and self-serving remarks.

Plaintiff-appellee contends that the whole statement is admissible because a part was brought out on cross-examination and further insists that all matters covered in the statements were covered in the cross-examination and that there was no possible way that only a part of the statements could be used to rehabilitate these witnesses.

The argument of both parties is somewhat clouded by a

failure to distinguish between two quite different, but similar responses to a common problem: How to rehabilitate a witness who has been impeached[1] on cross-examination by evidence (or perhaps mere suggestion) that at some prior time he made a statement inconsistent with, or in contradiction of, his present testimony on a particular point. One quite frequent response is for the party who called the witness to then attempt, on redirect examination, to rehabilitate his witness by showing that at some *other* time prior to the trial he made another statement which is consistent with his present testimony. Not uncommonly the prior consistent statement offered in evidence relates to some facet of his testimony on which he has not been impeached. That was the situation in some of defendant-appellant's authorities, including *Dagley* v. *Armstrong Rubber Co.*, (7th Circ. 1965) 344 F. 2d 245 and in *Hicks* v. *State* (1905), 165 Ind. 440, 75 N. E. 641, on which *Dagley* is founded, but it is not the situation in the case at bar.

In *Hicks* and *Dagley* it was held that:

> "the party by whom the witness was called may prove statements . . . in harmony with those made by the witness at the trial. * * *
>
> "This rule, however, does not authorize the admission of all prior statements of the witness in harmony with his testimony at the trial, but only such as are in harmony with the part of his testimony which has been contradicted. . . ." (165 Ind. at 442)

In the case at bar, however, the plaintiff after his witnesses had been impeached did not attempt to bolster their testimony by proof of *other* statements in harmony with their testimony. On the contrary, his response was to read into evidence a transcript of the whole of the very same statement. This response is one which was approved in *New York Cen-*

---

1. The impeachment of a witness, like the impeachment of a public officer, is merely a charge. As to a witness it is a charge of something presumed to affect his credibility. See "impeach" or "impeachment" in any dictionary.

*tral R. R. Co.* v. *Wyatt* (1962), 135 Ind. App. 205, 234, 184 N. E. 2d 657, and *Terre Haute Electric R. Co.* v. *Lauer* (1899), 21 Ind. App. 466, 52 N. E. 703, cited to the trial judge and relied on by him in overruling defendant's objection. The rule by which the entire statement is admissible is stated in *Brown* v. *State* (1915), 184 Ind. 254, 108 N. E. 861, as follows: "It is the settled rule that where a party opens the door by introducing a part of a conversation either in direct or cross-examination, the opposing party has a right to all that was said in the conversation."

That is but one of the rules by which the principle of verbal completeness is effected, the general principle being that "verbal utterances must be taken as a whole, not by fragments or by summary." (7 Wigmore, EVIDENCE [3rd Ed. 1940] p. 466, § 2094.)

> "[T]he opponent, against whom a part of an utterance has been put in, may in his turn, complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance. It has been seen, in the foregoing sections, that there is much opportunity for difference of opinion whether the *proponent* in the first instance *must* put in the whole. But there is and could be no difference of opinion as to the *opponent's right,* if a part only has been put in, himself to *put in the remainder.* Indeed it is the very fact of this later opportunity and right which (as already seen) has frequent bearing upon the question whether it is worth while to require it from the proponent in the first instance.
>
> This right of the opponent to put in the remainder is universally conceded, for every kind of utterance without distinction; and the only question can be as to the scope and limits of the right." (7 Wigmore, EVIDENCE [3rd Ed. 1940] p. 523, § 2113)

Professor Wigmore then discusses the limits on that rule, including the limitation that "no more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part is receivable." He defends this limitation in principle, but concludes:

"Nevertheless, it is perhaps in practice undesirable to enforce such a limitation, if it is likely to lead to cumbersome definitions and to lend itself rather to quibbling objections than to substantial improvement in the investigation of truth. The simple rule, in the form to-day most commonly enforced, that 'the whole of what was said at the same time on the same subject' may be put in, has proved easily workable, and has been attended by no technical refinements in its use. It may therefore be said that the above limitation, though sound enough in principle, should not be sanctioned unless Courts can trust themselves to leave its application wholly to the determination of the trial judge." (Id. p. 526)

In another volume, where he is discussing testimonial impeachment, and what he calls "explaining away the inconsistency" and more specifically, by putting in the whole of the contradictory statement, he mentions that the English rule limits the right to "such other parts of the statement as explain its true significance", and continues:

"But in the United States it is common to say that the *whole of the conversation,* or of the *former testimony or the deposition,* may be received.

There is much to be said in favor of this looser doctrine, (1) because it affords a simpler test and avoids a continuous and petty wrangle over the various parts of the conversation or deposition, and (2) because the possible disadvantage of introducing some irrelevant matter may well be borne by the party who provoked this result by attempting to introduce a fragmentary portion." (3 Wigmore, EVIDENCE [3rd Ed. 1940] p. 739, § 1045)

We believe that the rule in Indiana, notwithstanding some confusion and inconsistency in the pronouncements in some of the older cases, is the simple rule stated by Wigmore. Thus when the defendant put part of the witnesses' statements into evidence by questions asked on cross-examination, the door was opened for plaintiff to put the whole statement into evidence on redirect examination. *The Shelby National Bank, Adm.* v. *Miller* (Ind. App. 1970), 259 N. E. 2d 450, 469, 21 Ind. Dec. 675, 704.

Defendant also asserts that it was error for the court to permit the plaintiff to read the depositions of three physicians, instead of calling them as live witnesses. The depositions themselves disclose that each of these doctors lived in Lake County, a county which adjoins Newton County, the county of trial. By the provisions of Burns IND. STAT. ANN. § 2-1536, then in effect, a witness must be "beyond the adjoining county or beyond the subpoena power of the court" before his deposition is admissible on the basis of his remoteness from the trial site. However, Burns IND. STAT. ANN. § 2-1506, provided that a deposition could be used at the trial "[w]hen the deponent is . . . a practicing physician . . . and the trial is to be had in any county in which the deponent does not reside."

Defendant contends that the last quoted provision (Burns § 2-1506, enacted in 1881) was superseded by that first quoted (Burns § 2-1536, enacted in 1961 and amended in 1965). The 1961 statute (Acts 1961, Ch. 292), however, contains no express repealing clause. Instead, its eighth section (Burns § 2-1540) reads:

"This act shall not be construed as a repeal of any law not directly in conflict herewith, but rather as supplemental to any other law governing depositions and to that effect this law shall be given a liberal interpretation."

That provision, we hold, negates any legislative intent to repeal any law making a deposition admissible.[2] Defendant's other arguments concerning the use of these depositions were directed towards showing that the error was not harmless. Our holding that there was no error renders those arguments moot.

Appellant's final assertion of error is that the medical reports of Dr. Olson which were appended to his deposition were

2. Both statutes have now been repealed by Ind. Acts 1969, Ch. 191, § 3, and replaced by Trial Rule 32, INDIANA RULES OF PROCEDURE, effective January 1, 1970.

wrongfully admitted. Appellant argues that these medical reports were hearsay because they were made outside the courtroom, were not subject to cross-examination, and were offered as proof of the matter asserted therein. This is true. But not all hearsay is inadmissible. One exception to the hearsay rule is that when a witness testifies in chief from a memorandum used to refresh his recollection, the memorandum is admissible into evidence on cross-examination. *DeArmond* v. *Carter*, 127 Ind. App. 34, 43, 134 N. E. 2d 239 (1956). And even if it was error to admit these reports, it was harmless error. As stated in defendant's objection, everything in the reports was already in evidence through the doctor's oral testimony.[3] *DeArmond* v. *Carter*, *supra*, 127 Ind. App. at 43.

No error being found, the judgment is

Affirmed.

Hoffman, P.J., Pfaff and Sharp, JJ., concur.

NOTE.—Reported in 260 N. E. 2d 810.

---

3. This statement is used as the basis of an argument that "it was nothing more than bolstering for the reports to be admitted into evidence as plaintiff's exhibits A and B and to go to the jury room." Also, that to admit this evidence "in a form which the jury could take to the jury room added to, compounded and aggravated the initial error of allowing Dr. Olson's depositions to be read into evidence."

Defendant-appellant cites no authority contrary to the holding in *Nichols* v. *State* (1879), 65 Ind. 512 that: "We regard it as settled law in this State, that it is error to permit, over the objections and exceptions of the opposite party, items of documentary evidence to be taken to their consultation room by the jury." *Summers* v. *Greathouse* (1882), 87 Ind. 205, 207; *Chicago, etc., Ry. Co.* v. *Gorman* (1914), 58 Ind. App. 381.