## PARKER *v.* STATE OF INDIANA.

[No. 24,765.    Filed October 9, 1925.]

1. HOMICIDE.—*Indictment for murder in an attempt to rob held sufficient.*—An indictment charging that defendant did "feloniously kill and murder" a named person in an attempt to perpetrate a robbery, by "feloniously and purposely" inflicting a mortal wound on said person by * * * shooting at and against him with a revolver and thereby mortally wounding him, "and did then and there" attempt to commit the robbery of another in the manner described, sufficiently charged the crime of murder in an attempt to commit robbery, as against a motion to quash on the ground that it did not state facts sufficient to constitute a public offense.    p. 536.

2. WITNESSES.—*Other evidence and prior statements in conflict with witness' testimony may be admissible for purpose of impeachment only, and not as proof of facts stated.*—Under the provision of §562 Burns 1926, §531 Burns 1914, §507 R. S. 1881, a witness who denies the truth of material facts to which he was expected to testify may sometimes be contradicted by other evidence, and the party calling him may sometimes introduce evidence to show that he has made statements different from his testimony, but such evidence is admissible only for the purpose of impeaching the witness and not as proof that statements previously made were true.    p. 537.

3. CRIMINAL LAW.—*Error to allow written confessions of one of two defendants implicating his codefendant to be read to the former as parts of question asking whether he made the confessions, after his denial of truth of statements therein.*—Where one of two defendants charged with the crime of murder in attempt to rob, when placed on the witness stand, denied the truth of statements previously made by him in written confessions implicating his codefendant in the attempt to rob and in the murder, it was error to read to him such confessions declaring the codefendant present and containing other inadmissible matter as parts of questions asking whether or not he made such statements, his codefendant not being present when they were made, and such procedure was not justified by §562 Burns 1926, §531 Burns 1914, §507 R. S. 1881.    p. 540.

4. CRIMINAL LAW.—*Assignment of error that evidence was perjured and unworthy of belief presents no question for decision.*
—An appellate tribunal cannot determine from an inspection of the record that testimony was perjured and unworthy of belief, and an assignment of error to that effect presents no question for decision (*Partlow* v. *State,* 195 Ind. 164, distinguished). p. 541.

5. CRIMINAL LAW.—*Objection must be made before question is answered when it discloses character of evidence that may be expected.*—Where a question asked a witness fully discloses the character of evidence that may be expected to be given in answer thereto, objection to the admission of such evidence must be made before the question is answered. p. 541.

From Vigo Circuit Court; *John P. Jeffries,* Judge.

Joseph Parker was convicted of murder in attempt to rob, and he appeals. *Reversed.*

*Henry W. Moore, James P. Stunkard* and *Victor O'Donnell,* for appellant.

*Arthur L. Gilliom,* Attorney-General and *U. S. Lesh,* for the State.

EWBANK, J.—Appellant and another were charged by indictment with the crime of murder in an attempt to rob. At that time, appellant had been convicted and sentenced to imprisonment for a long term of years, for a robbery committed in Missouri, and also for another robbery committed in Indiana, and he admitted on cross-examination that he had participated in a third robbery in Illinois. But he denied that he was present or had any part in the attempt to rob a filling station in Terre Haute at the time the murder was committed for which he was on trial. He was found guilty and was sentenced to death. Overruling his motion to quash the indictment for the alleged reason that it does not state facts sufficient to constitute a public offense, and overruling his motion for a new trial are assigned as errors.

The indictment alleges that the defendants, at a des-

ignated time and place, "did then and there unlawfully and feloniously kill and murder one Steven 1. Kendall in the attempt to perpetrate a robbery, by then and there forcibly, feloniously and purposely shooting at and against and thereby mortally wounding the said Steven Kendall with a certain deadly weapon called a revolver, then and there loaded with gun powder and leaden balls, which said revolver they (naming them) then and there had and held in their hands, and did then and there forcibly, feloniously and by violence and by putting Harry Esthan in fear, attempt to take from the person and presence of said Harry Esthan the sum of $50 in money, of the value of $50, of the personal property of the Sho-Me-Oil Company, a corporation, from the effects and results of such shooting and mortally wounding so, as aforesaid done by said (defendants) with the said gun, he the said Steven Kendall then and there instantly died, contrary," etc. This indictment certainly is not a model to be followed. The fact that the killing was done in the alleged attempt to rob might be and ought to be charged more clearly and more directly. But since it contains the averments that defendants did "feloniously kill and murder" the deceased in an attempt to perpetrate a robbery, by "feloniously and purposely" inflicting a mortal wound in the manner and by the means alleged, "and did then and there" attempt to commit the robbery as described, we have concluded that it sufficiently informed the accused of the nature and cause of the accusation against him, and stated facts constituting the public offense of felonious homicide with such a degree of certainty that judgment could be pronounced according to the right of the case. The charge that defendants "feloniously" killed and murdered the deceased amounted to an averment that the offense was purposely committed, with criminal intent. *Carder* v. *State*

(1861), 17 Ind. 307; *Hamilton* v. *State* (1895), 142 Ind. 276, 277, 41 N. E. 588. And these averments, together with the charge that, at the same time and place, defendants attempted to rob Esthan of money belonging to the Sho-Me-Oil Company and killed Steven Kendall in the attempt to perpetrate a robbery, make it sufficient as against the objection stated in the motion to quash, and no question is presented as to its sufficiency in any other respect.

The first witness called by the state was the boy jointly indicted with appellant under the name of Edward Barber, but who said that his right name was 2. Arthur Smith. He testified that he was in Terre Haute on January 23, 1924, the day that Kendall was shot, but that appellant was not with him and did not participate in the attempted robbery of the Sho-Me-Oil Company on that date, and that he was not then acquainted with appellant. A statement in writing of nearly 500 words was then shown to him which purported to recite a long series of acts done by himself and appellant on January 22 and 23, and of other acts done and statements made by the witness in company with certain detectives on March 21, 1924 (nearly two months later), when appellant was not present; and he was asked if he made that statement, when he answered that he did. Over an exception by appellant, the prosecuting attorney was then permitted to read the statement to the witness, in the presence of the jury, and to repeat the question whether or not he made that statement, when he again said that he did, but, in answer to another question, said that the statement was not true. The witness was then shown another statement in writing of nearly 700 words, bearing his signature and purporting to recite a series of acts done by himself and appellant during a period of seven days, from the twenty-first to the twenty-seventh of January, 1924, with

what the witness and a third person did for "about a week" after the time when he said they separated from appellant on January 27, which statement was read to him as part of a question whether or not he made such statement; and over an objection and exception by appellant, the witness was permitted to answer that he did. In answer to a series of questions, the witness then testified that he had repeatedly made statements that appellant was in Terre Haute on January 23, 1924, and had stated that appellant assisted in the attempt to rob the Sho-Me-Oil station, in which Kendall was killed, but that the statement about appellant was not true; and that although admitting that he (the witness) was there and had shot Kendall, he refused to tell who was with him. A very little evidence was afterward introduced by the state tending to prove that appellant had admitted to others imprisoned with him in the county jail that he took part in the attempted robbery and murder, while there was other evidence to the contrary. Counsel for the state seek to justify reading these statements in the presence of the jury and offering evidence that they were made by the witness, on the ground that Smith had been relied on by the prosecution as a witness to prove that appellant was present, taking part in the attempt to rob, when the murder was committed, and that his denial of that fact opened the way to prove what he had previously stated on the subject. A witness who denies the truth of material facts to which he has been expected to testify may sometimes be contradicted by other evidence, and the party calling him may sometimes introduce evidence to show that he has made statements different from his testimony. §562 Burns 1926, §531 Burns 1914; *Adams* v. *State* (1901), 156 Ind. 596, 605, 59 N. E. 25.

But such evidence is admissible only for the purpose of impeachment, and not as proof that the statements

previously made were true; and it should be limited to breaking the force of testimony denying facts of which competent proof, other than the fact that the witness has so stated, can be and is offered. But the written statements thus read to the jury against appellant were not limited to making such proof, while the witness freely admitted, before they were so read, that he had more than once told persons that appellant was with him at the oil station when Kendall was killed, though he now said that all such statements were false. The statement made on March 20, purported to tell when appellant came to Terre Haute, at what hotel he stopped, where he ate lunch, that he and the witness stole a Ford car and where they took it from, that they drove to "the north part of the city," that they bought gasoline and paid for it, that appellant remained in the car, all the circumstances of the attempted robbery and the shooting, that they ran the car against a fence in driving away, at what place they afterward abandoned the car, that they caught a freight train for Danville, Illinois, near there, that they reached Chicago and spent the day there and stole another car in which they drove to St. Louis, that they robbed a man there, and where they stayed for more than a week in St. Louis. The statement made on March 21, assumed to correct certain statements contained in the other one as to how the witness and appellant came to Terre Haute on the day before the murder, where they came from and the railroad fare they paid, where they spent the night, where they breakfasted and what they ate, when and where they ate dinner, that they spent two hours in a picture show and what picture they saw; and it recited that, on the day the statement was made (three months after the homicide), the witness had shown two detectives that theater, the name of which was stated, that he and the detectives had then driven "to the oil station that I

shot Kendall in," when witness "recognized it as the place I shot Kendall," and that they then drove out toward the edge of town, when witness told the detectives that he remembered certain places, including "the field where we left the car" and "the water tank where Parker and I caught the train for Danville"; that upon being driven to where they "stole the car," he "recognized the place" and "told the detectives where we got it."

Obviously, if the facts so recited in such detail were all proved by competent evidence, and it was further shown that the car which the robbers drove to 3. the oil station was stolen from the place indicated and was deserted in the field near the water tank mentioned in the narrative, there would be strong reason for believing that the witness Smith, alias Barber, had committed the murder in an attempt to rob, and that appellant had participated in its commission. And the fact that Smith, alias Barber, told of his movements for several days in minute detail was calculated to impress the jury with the truth of his statements. But, except for proof that on the day of the robbery and murder, a Ford car was stolen from the place indicated, which was found the next morning in the field referred to, and that, in leaving the oil station, the robbers were riding in a Ford car and it ran against a post, and that appellant had made some equivocal statements to fellow prisoners in the jail which might possibly be understood as admissions that he helped to kill a detective in Terre Haute while trying to "hold up" an oil station at about the time Kendall was shot (though capable of being understood in an entirely different sense), there was no competent evidence whatever of any fact recited in either of the statements which could in any degree be discredited by "Barber's" testimony to the contrary, even if he had been asked concerning them (which he

was not), and had denied them on the witness stand. But it is clear that, as to many of these facts, such as his trip about town with the detectives just before the second statement was made, what he said to them, and what was done and said by the witness and others at so many times and places when and where appellant was not present, Smith, alias Barber, would not have been a competent witness, even if he had been questioned along that line. And as to many of the other facts recited in the writings, no foundation was laid for introducing proof of his statements out of court. The mere fact that, when called to testify, the witness denied that appellant had assisted him in the attempted robbery of the Sho-Me-Oil Company on January 23, did not open the way for proving statements that he had made as to other facts about which he was not interrogated, and in proof of which no competent evidence whatever was introduced. It was error thus to permit these statements to be read in the presence of the jury, with proof that appellant's alleged accomplice had made them when he was not there.

This court cannot determine from a mere inspection of the record that evidence received and acted on by the jury and the trial court was perjured and unworthy of belief, and assignments of error based on such a contention present no question for decision. In *Partlow* v. *State* (1924), 195 Ind. 164, 144 N. E. 661, a direct attack was made upon the judgment, supported by the affidavits of all the witnesses on whose evidence the conviction was obtained that they had sworn falsely. That is not the case here.

Other questions discussed by counsel as to the alleged erroneous admission of evidence are not sufficiently presented by the record. Where the questions asked of a witness fully disclose the character of evidence that may be expected to be given in an-

swer thereto, objections to the admission of such evidence should be made before answers are given. A party may not deliberately take a chance on the testimony of a witness in answer to improper questions being favorable to him, and, when it proves to be unfavorable, interpose an objection that such questions ought never to have been answered.

The statement in instruction No. 21 "that the accused, if he be innocent of the commission of this crime, ought not to be erroneously *acquitted*," was clearly incorrect. But, since the judgment must be reversed for other reasons, we need not consider whether or not the error was so palpable as not to mislead the jury concerning the meaning intended. Other errors complained of probably will not be repeated when the cause is again tried.

The judgment is reversed, with directions to sustain defendant's motion for a new trial.