JOSEPH A. HUBBLE *v*. STATE OF INDIANA.

[No. 1271 S 383. Filed August 6, 1973.]

*John C. Mowrer,* of Danville, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.*—Appellant was charged by affidavit with the crime of second degree burglary. After trial by jury in the Hendricks Superior Court appellant was found guilty as charged and was sentenced to imprisonment at the Indiana Reformatory for a period of not less than two (2) nor more than five (5) years.

On appeal the appellant raises two issues, namely whether State's Exhibits 2, 3, 4, and 5 were properly admitted into evidence and whether the evidence was sufficient for the court to overrule defendant's motion for a directed verdict at the close of the state's evidence.

Appellant contends that it was reversible error for the court to admit State's Exhibits 2, 3, 4, and 5. Those Exhibits were photographs of the Maplecroft Drive-In premises taken by a deputy sheriff on July 9, 1971, three days before the trial of this cause. Defendant objects to the admission of these photographs for the reason that they did not depict the scene as it existed on March 31, 1971, the date of the burglary. At the outset it should be noted that although defendant's contention applies to each of the above-mentioned Exhibits, it is obvious that two of them are not involved in this issue. Two of the photographs are irrelevant to the issue presented. The major contention of the appellant is that the photographs showed a greater amount of foliage existing on the date they were taken than existed on the date of the crime. However, State's Exhibit 2 contains no foliage at all, but rather is a photograph of the door to the concession stand at the theater. In addition, State's Exhibit 3 does not show the bushes around the theater where the stolen goods were allegedly hidden by the defendant. Instead, Exhibit

---

* This case was reassigned from another Justice to the writer of this opinion on June 27, 1973.

3 showed bushes around the concession stand and the condition of the buildings on the date the photograph was taken. However, State's Exhibits 4 and 5 do show foliage near the motion picture screen where the stolen goods were hidden. The appellant contends that State's Exhibits 4 and 5, because they show additional foliage existing on the dates the photographs were taken, prejudiced the defense by misleading the jury with respect to whether the hidden stolen goods could have been seen by a normal passerby on March 31, 1971. The appellant suggests that this is crucial because the state sought to prove that only the perpetrators of the burglary would have known where the goods were hidden and could have gone so directly to them at the time the alleged perpetrators were observed by the state's witnesses. We think the appellant's contention is without merit because in offering the photographs into evidence the prosecution was careful to ask the deputy sheriff who took the photographs what they depicted and on what date the photographs were taken. In addition, the deputy sheriff testified that the premises did look somewhat different on March 31 than they did at the time the photographs were taken by saying, "I think there would probably be more foliage now." Since the jury was specifically apprised of the difference between what the scene looked like on the date of the burglary and the date the photographs were taken, we do not believe that they could have been misled. The fact that some conditions have changed at the time photographs are taken does not necessarily render the photographs inadmissible, but the changes, if material should be explained in such a way that the jury will not be misled. 3 JONES ON EVIDENCE § 17:53 (6th ed. 1972) and cases cited therein. In addition, after reviewing the record, it is clear that the photographs in question were not introduced for the sole purpose of showing the jury the shrubbery in the area where the stolen goods allegedly were hidden, but were also introduced for the purpose of showing the jury certain areas around the theater so that they could understand the relationship of the various

parts of the premises. In our view there could be nothing prejudicial in the admission of the photographs for the last mentioned purpose.

Finally, the photographs in question were not the only evidence that the boxes of goods taken by the defendant were effectively concealed from view when placed in the bushes. No less than six witnesses gave direct testimony establishing that the boxes of goods taken from the concession stand were not easily observable by passersby. In our view, the state's theory that the perpetrators of the burglary had hidden the goods in the bushes hoping to return the next evening to retrieve them, and that no one but the burglars would know that anything was in the bushes was emphatically established by the six witnesses. The evidentiary role of the photographs was merely cumulative of other direct testimony. *New* v. *State* (1970), 254 Ind. 307, 259 N. E. 2d 696. *Hawkins* v. *State* (1941), 219 Ind. 116, 37 N. E. 2d 79.

It is well settled in this state that the admission of the evidence of a photograph is within the sound discretion of the trial court and the court's action therein will not be disturbed except for abuse. *New* v. *State* (1970), 214 Ind. 307, 259 N. E. 2d 696; *Randolph* v. *State* (1954), 234 Ind. 57, 122 N. E. 2d 860. No such abuse has been shown in the instant case.

Appellant's final contention is that the court erred in refusing to direct a verdict of acquittal at the close of the state's case. However, in arguing this point the appellant makes it unclear whether he is suggesting that the motion for a directed verdict should have been sustained or that the evidence was not sufficient to support the verdict. In either case the test to be applied by this court is whether there was a total absence of evidence on an essential element of the crime. See *Wojcik* v. *State* (1965), 246 Ind. 257, 204 N. E. 2d 866; *State* v. *Patsel* (1960), 240 Ind. 240, 163 N. E. 2d 602.

This Court is bound by well-settled rules of appellate review in such cases. We will not weigh the evidence nor resolve questions concerning the credibility of witnesses. Instead, we look to that evidence most favorable to the state and to all reasonable inferences to be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to sustain the jury's conclusion as to each element of the crime, the verdict will not be disturbed. *Moore* v. *State* (1973), 260 Ind. 154, 293 N. E. 2d 28; *Dunn* v. *State* (1973), 260 Ind. 142, 293 N. E. 2d 32; *Wardlaw* v. *State* (1972), 259 Ind. 282, 286 N. E. 2d 649; *Lee* v. *State* (1972), 259 Ind. 301, 286 N. E. 2d 840.

A review of the evidence most favorable to the state discloses the following facts. The concession stand at the Maplecroft Theater was broken into sometime during the late evening of March 30, 1971, or the early morning of March 31, 1971. Certain items were missing including two anamorphtic lenses uses in movie projection. In addition, a good deal of food and other concession items were missing. The concession area was ransacked. A few large boxes filled with various goods that had been taken from the concession stand were hidden in some bushes near the movie screen. It was established by direct testimony that those items could not be seen without very close inspection. When the manager of the theater and his sons discovered the burglary, they filled some of the boxes which they discovered in the bushes with rocks to replace the goods that had been salvaged and taken back to the concession stand, acting on the theory that someone would return to take the goods.

The manager's two sons hid in the theater on the night of March 31, 1971, in the box office and concession area. About 10:15 P.M., Jim Little, one of the manager's sons, called for his brother Joe on a walkie-talkie and notified him about an approaching car. Joe went down to the screen and hid in the bushes. He heard someone in the opposite corner of the screen rustling in the bushes. He also saw an individual in the pas-

senger side of a car with the door open. Joseph Little testified that he heard a voice from the bushes yell out "Joe, Joe, come here Joe." The person in the car was observed jumping out and running up an incline to where the screen was. The individual went directly to the place where the boxes were hidden in the bushes. One of the individuals identified as the defendant Joseph Hubble, came running back down the slope to the car and was apprehended by Joseph Little. Standing near defendant's car immediately after apprehending him, Mr. Little observed two projection lenses on the back seat of the car which were two of the items which had been stolen from the concession stand. The car in which the stolen lenses were found was later proved to be defendant's car, although at the time he claimed it belonged to a friend. In our view even though no eye witness testified that he saw the appellant break and enter the premises, the evidence was sufficient to sustain a conviction of second degree burglary. Appellant cites *McAdams* v. *State* (1948), 226 Ind. 403, 81 N. E. 2d 671.

> "It is true that unexplained, exclusive possession of stolen property soon after it was stolen ordinarily constitutes a circumstance from which the trier of the facts may draw an inference of guilt; (citations omitted) but it is merely a circumstance for the jury to consider along with all the other facts and circumstances of the case."

*Id.* at 411-412, 671 N. E. 2d at 674. The defendant asserts that all that was proven was that he was in possession of recently stolen goods. However, in our view, the presence of the two projection lenses on the seat of the defendant's automobile at the theater was not the only circumstance from which the jury could have drawn the conclusion that appellant was guilty. In addition to being in possession of recently stolen goods, it was established that the appellant had returned to the burglarized location and had run toward the bushes where the goods were hidden without hesitancy. The jury could reasonably have inferred that no one but the persons who had

broken and entered the premises the previous night could have known that the contents had been hidden there. There was ample testimony that the goods were hidden in such a way that no one else could have easily seen them. This fact coupled with the appellant's possession of the two lenses on the floor of his car constituted sufficient evidence to sustain the conviction of guilty of second degree burglary. Defendant contends that he did explain his possession of recently stolen goods. It is appellant's assertion that his explanation was reasonable. However, it is well settled that the jury did not have to believe defendant's explanation. The jury is the exclusive judge of the credibility of witnesses. *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89. For the reasons stated, the judgment of the trial court is affirmed.

Givan, Hunter, Prentice, JJ., concur, DeBruler, J., concurs in result.

NOTE.—Reported in 299 N. E. 2d 612.