JAMES EARL PATTERSON *v.* STATE OF INDIANA.

[No. 275S34. Filed March 18, 1975.]

56

*Thomas H. Clifford,* Merrillville, for appellant.

*Theodore L. Sendak,* Attorney General, *David A. Miller,* Deputy Attorney General, for appellee.

PRENTICE, J.—This case is before us upon the defendant's (appellant's) petition to transfer. Said petition is now granted. The decision and the opinion of the Court of Appeals, Third District filed July 24, 1974 and reported in 314 N.E.2d 92 is hereby vacated, but the judgment of the trial court is, nevertheless, affirmed.

Numerous issues were presented by the appeal and will be treated herein. We go first to the "hearsay evidence" issue as it is that issue that occasioned the grant of transfer, in hopes of making a clear pronouncement of our departure from an ancient application of the hearsay rule—one that we have more recently determined to be a misapplication.

To avert giving a mistaken concept that we are abandoning or altering the "hearsay rule," we shall here repeat its accepted definition.

" 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement

being offered as an assertion to show the truth of matters asserted therein, *and thus resting for its value upon the credibility of the out-of-court asserter.'* (McCormick, Evidence § 225)." (Emphasis ours) *Harvey* v. *State*, (1971) 256 Ind. 473 at 476, 269 N.E.2d 759.

In the case before us, the prosecution was in possession of two pretrial signed statements given to the police by witnesses, one the wife of the defendant and the other Miss Robinson, a guest of the victim at the time of the homicide. It is difficult to determine from the record precisely why such statements were either offered or objected to, but such is not pertinent to this opinion. Miss Robinson's testimony did not conflict with the statement she had previously given to the police, but it was somewhat more incriminating, because it was more revealing. In one relatively minor aspect, the prior statement of Mrs. Patterson was in conflict with her testimony. Both witnesses had been called by the State.

On cross-examination, the defendant confronted Miss Robinson with excerpts from her prior statement, seeking to impeach her. Thereafter, the court permitted the State to introduce the entire written statement, over the objection of the defendant that it was hearsay.

On direct examination, the State offered Mrs. Patterson's prior statement for impeachment purposes. The defendant objected, asserting that there was no basis for impeachment by the State of its own witness. The court admitted the document and did not instruct the jury that the prior statement could be considered for impeachment purposes only and not as substantive evidence.

The admission of both of the aforementioned statements violated the traditional hearsay rule in Indiana, as such rule was regarded prior to *Skaggs* v. *State*, (1973) 260 Ind. 180, 293 N.E.2d 781. By dicta, we had previously stated that the primary reason for excluding hearsay is because of its insusceptibility to the test of cross-examination. *Harvey* v. *State, supra.* In *Skaggs,* we distinguished

prior cases wherein the out-of-court assertions had been excluded, the distinction being in such cases, the out-of-court asserter was not available for cross-examination. We made no attempt, however, to deal with prior cases where such out-of-court assertions had been excluded notwithstanding the presence and availability for cross-examination of the out-of-court asserters, i.e. *Hogan* v. *State*, (1956) 235 Ind. 271, 132 N.E.2d 908; *Parker* v. *State*, (1925) 196 Ind. 534, 149 N.E. 59. Undoubtedly, there are a host of other such cases. As in *Skaggs,* the out-of-court asserters, Miss Robinson and Mrs. Patterson were upon the witness stand at the time their out-of-court assertions were offered. Neither denied giving the statements attributed to her, nor did either profess ignorance of such statements. It was, therefore, not necessary for the truth of the out-of-court assertions to rest upon the credibility of persons not present and (then) subject to cross-examination concerning the statements. Under such circumstances, since the matters asserted were relevant to the issues, there was no reason to reject the statements, as substantive evidence, simply because they had been made at a time when the witnesses were not subject to cross-examination. This view is in accord with, although not as liberal as, those expressed by Wigmore on Evidence (Chadbourn Revision) § 1018, McCormick on Evidence, 2d Ed., § 251, The Uniform Rules of Evidence, Rule 63 (1) and The Model Code of Evidence, Rule 503 (b). The revised federal rules effective July 1, 1975 require the prior statement to have been given under oath, a departure in this regard from the present federal rule and from the revised rule recommended by the Advisory Committee. We note, however, that in all three versions of the federal rules, the availability of the declarant for cross-examination is required. It is our judgment that this safe-guard is of paramount importance and is adequate.

Defendant assigned as further error the denial of his tendered instruction No. 3 which was as follows:

"The defendant is not required to satisfy your minds of the existence of any fact or state of facts, which, if true, is the defense. In other words, applying this rule to the case at hand the defendant is not required to convince you that he acted in self-defense.

"The State is required to prove beyond a reasonable doubt that he did not act in self-defense."

The tendered instruction is basically a correct statement of the law but is an oversimplification. The last sentence, standing without qualifications, might give rise to the belief that the State is required to disprove an assumption or presumption of self defense, which is not the case. *If self defense is an issue in the case,* then the burden of proof thereon is upon the State, just as with the other issues, and under such circumstances the defendant is not required to satisfy the trier of fact that the homicide was justifiable, rather it is enough if the evidence upon that issue raised a reasonable doubt. *Hill* v. *State,* (1937) 212 Ind. 692, 699-700, 11 N.E.2d 141; *Males* v. *State,* (1927) 199 Ind. 196, 202-203, 156 N.E. 403; *Dorak* v. *State,* (1915) 183 Ind. 622, 109 N.E. 771; *Clark* v. *State,* (1902) 159 Ind. 60, 64 N.E. 589; *Parker* v. *State,* (1894) 136 Ind. 284, 35 N.E. 1105; *Trogdon* v. *State,* (1892) 133 Ind. 1, 32 N.E. 725. Self defense is not an issue in every homicide case. It may be injected by direct evidence or by inference reasonably drawn from any evidence of probative value. Until there is such an issue, however, the State is under no burden to refute an imaginary or anticipated defense.

In the case before us the issue of self defense was present and instructions thereon were required. However, the refusal of an instruction is not grounds for reversal if the substance thereof is covered by other instructions. *Lolla* v. *State,* (1973) 260 Ind. 221, 294 N.E.2d 798; *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686. The tendered instruction embodied concepts of the presumption of innocence, the burden of proof and reasonable doubt.

These factors were covered in instructions Nos. 1, 11, 12, 13, 16 and 17, and we do not believe that the jury could have been misled by reason of not having received the instructions tendered and refused.

Defendant urges *Kampo Transit, Inc., et al.* v. *Powers,* (1965) 138 Ind. App. 141, 211 N.E.2d 781 as authority upon this claimed error and advises us thereon as follows:

> "The question in the instant case must be whether Defendant's Tendered Instruction No. Three was substantially repetitious of the subject matter contained in other instructions given so that it would tend to overemphasize a certain element of the case. Only in such case could it be rejected."

Such is not a correct statement of the law or of the holding in the *Kampo* case. The holding in that case was that an instruction that was substantially repetitious so as to tend to overemphasize was properly refused and not that an instruction, although repetitious, was required to be given if it was not so repetitious as to tend to overemphasize. The rule was better stated by Chief Justice Givan in *Johnson* v. *State,* (1972) 258 Ind. 683, 284 N.E.2d 517 as follows:

> "* * * Certainly all phases of the law cannot be covered in a single instruction. By their very nature there is a certain amount of repetition in the instructions when taken as a whole. It is only when instructions are so repetitious as to place an undue emphasis on a particular point that they become improper. * * *." 284 N.E.2d at 519.

We do not maintain that the instruction tendered and refused was likely to overemphasize any of the elements there embodied and that it would have been error for the trial court to have given it. But neither was the refusal thereof reversible error, in view of the giving of the instructions above enumerated.

The next issue is whether the trial court erred in admitting into evidence over the defendant's objections State's Exhibits No. 2, 3 and 7 which were photographs taken at the scene of the crime. These exhibits were, to some extent, repetitious,

cumulative and gruesome but were, neverthelses, relevant and competent as aids to assist the juror in orienting themselves and in understanding other evidence. This is true, notwithstanding two of the photographs pictured the victim's body after it had been moved from the exact position in which it was found.

The relevancy of photographic evidence may be determined by an inquiry as to whether a witness would be permitted to describe verbally the objects photographed. *Pierce* v. *State,* (1970) 253 Ind. 650, 256 N.E.2d 557; *Hawkins* v. *State,* (1941) 219 Ind. 116, 37 N.E.2d 79. Considerable latitude is permitted to the trial judge in determining the admissibility of such evidence when a fair conflict appears between the State's right to present relevant evidence and the defendant's right to be protected from prejudice likely to be engendered from morbid and shocking displays. The question is, of necessity, one of balance, and the trial judges will be on guard against the natural propensities of the State sometimes to appeal to passions in its attempts to obtain convictions. *Hubble* v. *State,* (1973) 260 Ind. 655, 299 N.E.2d 612; *New* v. *State,* (1970) 254 Ind. 307, 259 N.E.2d 696; *Randolph* v. *State,* (1954) 234 Ind. 57, 122 N.E.2d 860. When prejudicial imbalance appears, this Court will not hesitate to set aside the conviction. *Kiefer* v. *State,* (1958) 239 Ind. 103, 153 N.E.2d 899. However, we see no such imbalance or prejudice in this case.

The defendant has further asserted that the reception of State's Exhibits No. 3 and 7 was erroneous in that they did "little if anything other than to establish that the defendant died in a violent manner" and that this was not controverted, it being admitted that he killed the decedent by stabbing him with a knife and that the issues were to determine who was the aggressor and whether or not the defendant was acting in self defense. We must remind the defendant that the issues had not yet been so narrowed at the time the exhibits were offered. The State was required to show the

manner of the decedent's death in its case in chief, and the defendant's admission did not occur until he took the witness stand in his own defense.

The sole remaining issue herein is the correctness of the trial court's action in overruling the defendant's challenge to the jury venire from which the jury panel was drawn. Defendant, in his motion to correct errors, asserted that black citizens were systematically excluded from the venire, thereby denying his right to a trial by a jury of his peers. Upon this issue, we adopt the opinion of the Court of Appeals authored by Chief Judge Hoffman, as follows:

"The Supreme Court of the United States has consistently held that jury selection systems are required to draw prospective jurors from a fair cross-section of the community. *Thiel* v. *Southern Pacific Co.*, (1946) 328 U.S. 217, 66 S. Ct. 984, 90 L. Ed. 1181; *Glasser* v. *United States*, (1942) 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680; *Smith* v. *Texas*, (1940) 311 U.S. 128, 61 S. Ct. 164, 85 L. Ed. 84; *Strauder* v. *West Virginia*, (1879) 100 U.S. 303, 25 L. Ed. 664. "Reasonable qualifications, however, may be imposed notwithstanding the fact that they may detract from the cross-section present in the actual jury pools. See: *United States* v. *Butera* (1st Cir. 1970), 420 F. 2d 564.

"The burden of demonstrating purposeful discrimination is imposed initially upon the defendant. *Sanders* v. *State*, (1972) 259 Ind. 43, 284 N.E.2d 751. See: *Whitus* v. *Georgia*, (1967) 385 U.S. 545, 87 S. Ct. 643, 17 L. Ed. 2d 599; *Hernandez* v. *Texas*, (1954) 347 U.S. 475, 74 S. Ct. 667, 98 L. Ed. 866. Further, in *United States* v. *Butera, supra,* at 569 of 420 F. 2d, it is stated:

" 'Thus, while "purposeful discrimination" may connote an element of bad faith in ordinary usage, the term has not been so limited by the Supreme Court; rather, the breadth with which the term has been used by the Court indicates that *purposeful discrimination exists whenever significant unexplained disparities exist.* In other words, it is not the significant disparities themselves which are unconstitution-

al, *Akins v. Texas*, 325 U.S. at 403-404, 65 S. Ct. 1276; *Hoyt v. Florida*, 368 U.S. at 69, 82 S. Ct. 159; they only raise the inference of discrimination. E.g., *Billingsley v. Clayton*, 359 F. 2d 13, 17 (5th Cir. 1966), (en banc), cert. denied, 385 U.S. 841, 87 S. Ct. 92, 17 L. Ed. 2d 74 (1966); *Witcher v. Peyton*, 382 F. 2d 707, 709-710 (4th Cir. 1968); *Salary v. Wilson*, 415 F. 2d 467, 470-471 (5th Cir. 1969). *Once that inference has been raised, it is the government's failure or inability to demonstrate that the disparities are not the product of discrimination which confirms the inference and invalidates the jury pool.* E.g., *Witcher v. Peyton*, 405 F. 2d 725 (4th Cir. 1969).' (Emphasis supplied)

The central question then, is whether appellant succeeded in establishing a 'significant disparity' between black citizens who were selected for jury service and the percentage of black citizens in the community. *Sanders* v. *State, supra.*

Counsel for appellant in challenging the jury selection process, noted that an excess of seventy jurors were present *in court* on the previous day and that approximately four out of the seventy were black citizens. Counsel thereafter stated his belief that the percentage of black citizens in the county amounted to approximately ten to twenty per cent. Appellant's argument that a significant disparity was thereby shown must fail, however, under reasoning similar to that which was succinctly stated in *Sanders*. Therein, our Supreme Court, at 54 of 259 Ind., at 757 of 284 N.E.2d, stated that,

" '[A]bsolutely no evidence was introduced which would establish the number of Negro citizens *selected* for the jury panels. For example, it was established that fifty-seven of the one hundred seventy-five persons selected on the jury panel in the present case failed to appear for duty. Appellant introduced no evidence which would indicate how many of the absentees were Negroes. *It would be an absurd exercise in speculation for this Court to invalidate a jury selection process when the only evidence on the subject relates solely to the persons appearing for duty rather than to the persons selected on the original panel.* Therefore, we need not decide what constitutes a "significant disparity" since the appellant failed to introduce reliable data upon which to base a finding.' (Emphasis supplied in part.)

"In the case at bar, no evidence was introduced to show that the group of jurors present *in court* represented the entirety of the jurors selected. Moreover, counsel's statements concerning his beliefs as to the racial composition of the county and his recollections as to the number of black citizens present cannot be regarded as 'reliable data' from which a determination could be made."

The judgment of the trial court is affirmed.

Givan, C.J., Arterburn and Hunter, JJ., concur; DeBruler, J. dissents with opinion.

## DISSENTING OPINION

DeBruler, J.—The statements, which are unfortunately elevated by the majority to the status of substantive evidence, were made by persons who observed the commission of the alleged offense for which appellant was successfully prosecuted. The statements were given to the police after the alleged crime and prior to trial. Neither was given under oath. The statements fully covered the witnesses' recollection of the entire episode. Both witnesses testified on behalf of the State at the trial. The clear message of Indiana case law is that such statements are hearsay and must be excluded upon proper objection, unless a foundation is laid which establishes that such statements are admissible under an exception to the hearsay rule. *Levi* v. *State,* (1914) 182 Ind. 188, 104 N.E. 765; *Wabash R. Co.* v. *Miller,* (1901) 158 Ind. 174, 61 N.E. 1005. These statements do not fall within one of the exceptions to the hearsay rule. Such statements may be used as prior inconsistent statements for the purposes of impeachment, or they may be used to refresh the recollection of the forgetful or recalcitrant witness; and in either such event a cautionary instruction must be given in the final instructions. *Rogers, Reed* v. *State,* (1974) 262 Ind. 315, 315 N.E.2d 707. The statements of the witnesses in this case were in fact used for impeachment and to refresh recollection, and the failure of the court to instruct the jury as to the limited purpose of the

statements was clear error. *U.S.* v. *Lipscomb,* 425 F. 2d 266 (6th Cir. 1970); *Rogers, Reed* v. *State, supra,* (DeBruler, J., dissenting).

The formulation of the "hearsay rule" quoted in *Harvey* v. *State,* (1971) 256 Ind. 473, 269 N.E.2d 759, is very useful and deserves to be repeated and continued in service. This definition is a good starting point in determining whether proffered evidence is hearsay, as it identifies the major factors which render such matter unreliable and objectionable. However, it should not be applied strictly and literally as has been done in the majority opinion. Surely "cross-examination" as used in the formulation should be interpreted as meaningful cross-examination, full and classic examination. After all, in a criminal prosecution, the right of confrontation and cross-examination is an assurance that the defendant will not be convicted on the basis of false or exaggerated testimony. Under the principle created by the majority, the cross-examination will come long after the witness gave the statement in some police station as part of the police investigation and by necessity will focus on the recollection of the witness of the circumstances in which the statement was made rather than upon the recollection of the witness of the events described in the statement. Cross-examination fulfills its function when the cross-examiner can probe the witness' present recollection of the relevant events, and it is severely limited in usefulness if the cross-examiner must zero in on the circumstances surrounding some former statement.

Here I would hold that the former statements of these witnesses were hearsay even though the witnesses were physically present in the courtroom and subject to cross-examination.[1]

NOTE.—Reported at 324 N.E.2d 483.

---

1. A helpful discussion of the problems surrounding the use of former statements of witnesses as substantive evidence is contained in 3 Ind. Legal Forum 309 (No. 2, Spring 1970), Beaver & Biggs, *Attending Witnesses' Prior Declarations as Evidence: Theory vs. Reality.*