Massa, J.,
concurring.
Twenty-two years have passed since Benjamin Laughlin was murdered in 1995, but now the man convicted of killing him will get a new trial; an outcome caused by a perfect storm of error by all involved— the trial court, the prosecutor, and the defense—resulting in a collapse of the system. I fully concur with Justice Rucker’s dispassionate legal analysis regarding ineffective assistance of counsel, but I find the remedy so regrettable and avoidable that I write separately to elaborate on the mistakes made and opportunities missed, and their impact on the question of laches.
The breakdown in this case begins with a situation not unusual in criminal proceedings: a witness identifying a defendant, then, for one reason or another not difficult to imagine, later recanting his statement. Here, it was Roosevelt Brooks’ unsworn pretrial statement identifying Humphrey, and Brooks’ subsequent denial at trial. The State admitted, as Exhibit L, Brooks’ prior inconsistent statement. The defense objected, not as to hearsay, but foundation, and no admonishment was sought as to the statement’s limited admissibility. This was the first mistake. Brooks’ statement was the only evidence directly identifying Humphrey as the shooter and was damning to Humphrey’s case.
Then as trial progressed, the prosecution and defense counsel were provided with a copy of the trial court’s tentative final jury instructions. The instructions reiterated what was known as the Patterson rule. That rule, however, was overruled nearly six years before Humphrey was tried for murder by Modesitt.[1] Modesitt was undeniably the law at the time of trial. Yet when asked whether they had any objections, both replied they did not.[2] Thus, they gave the trial court permission to, in effect, offer the jury an “unlimiting” instruction, if you will.[3] All three were complicit in endorsing the incorrect statement, perhaps simply due to an outdated pattern jury instruction still inexplicably in *691 use,[4] ignorance, or maybe out of zeal for a murder conviction.
At closing, defense counsel similarly argued to the jury:
Prior inconsistent statements may be considered by you for two purposes. You may use [them] to impeach the capacity for truthfulness of the witness or witnesses who made the inconsistent statements. And boy, did we have them. You may also consider the out-of-court statements as evidence in determining the guilt or innocence of the defendant of the crime charged. That’s the law, plain and simple, that’s the instructions. You have to follow what ..., follow what you’re presented.
Tr. at 488-489. Despite being entitled to a limiting admonition, defense counsel repeated the misstatement of law, permitting the jury to consider out-of-court statements, like Brooks’, for their truth.
Humphrey was subsequently convicted of murder, and sentenced to 60 years in prison. He directly appealed to this Court, which affirmed, while indicating several errors in his trial, including:
The trial court explicitly asked Humphrey’s counsel if he had any objection to the proposed instructions and counsel answered in the negative. Record at 427. Had a proper objection been lodged to the instruction, the court would have been required to entertain it. There is no claim of ineffective assistance of trial or appellate counsel raised in this appeal.
Humphrey I, 680 N.E.2d at 840. Not only does this statement identify the main issue in Humphrey’s trial, it hints at the method by which Humphrey could obtain relief. Nevertheless, Humphrey did not'petition for post-conviction relief until 15 years after his direct appeal—a delay that might suggest a successful laches defense for the State if adequately further developed.
The State sought to prove the affirmative defense of laches to bar Humphrey’s petition. The State raised the issue in its pleadings, offered some little evidence at the post-conviction hearing, and even now continues to argue this issue in briefing on appeal. However, astonishingly, the State failed to include this issue in its proposed findings to the post-conviction court, which adopted the State’s proposed findings and conclusions verbatim. In due course, Humphrey appealed and briefing proceeded. By order, the Court of Appeals remanded the case to the post-conviction court to amend its findings and conclusions to address the issue of laches.[5] Pursuant to the order, the post-conviction court made the requisite findings, concluding the State failed to carry its burden.
Laches is an equitable doctrine that bars consideration of the merits of a claim or right due to “neglect for an unreasonable or unexplained length of time, under circumstances permitting diligence, to do what in law should have been done.” Perry v. State, 512 N.E.2d 841, 842 (Ind. 1987) (internal quotations omitted). “For laches to bar relief, the State must prove by a preponderance of the evidence, first, that *692 the petitioner unreasonably delayed in seeking relief and, second, that the State has been prejudiced by the delay.” Id. at 843. A petitioner “can seldom be said to have delayed unreasonably in seeking relief’ absent knowledge of a defect or the means of seeking relief. Id. Direct proof of knowledge is not required, circumstantial evidence can suffice, but knowledge must be based on a showing of conscious indifference. Id. at 844-45. The State must “present some objective facts from which the court may draw a reasonable inference of knowledge”—inquiry notice alone is insufficient. Id. Knowledge may be inferred from facts such as repeated contact with the criminal justice system, consulting with attorneys, and incarceration in institutions with legal facilities. Id. at 844. “For post-conviction laches purposes, prejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution.” Armstrong v. State, 747 N.E.2d 1119, 1120 (Ind. 2001).
It appears that the State offered little more than the fact that 15 years had elapsed since Humphrey’s direct appeal, and the trial court heard testimony from defense counsel that he “[is] positive [he] never would have talked to [Humphrey]” about post-conviction relief. Post-Conviction Relief Tr. at 41-42. Further, the post-conviction court found that, although some evidence and witnesses were unavailable, their absence would not “significantly affect the State’s ability to retry the case.”[6] Findings of Fact and Conclusions of Law on Laches filed May 5,2016 at 3-4 [hereinafter FFCL]. It is true that the mere passage of time without knowledge of a defect is insufficient to constitute laches, but that isn’t all the State had in its arsenal. See Perry, 512 N.E.2d at 843 (“Unless a petitioner has knowledge of a defect in his conviction or of the means to seek relief from the conviction, he can seldom be said to have delayed unreasonably in seeking relief’). The problem is the State failed to deploy other arguments that would have allowed the post-conviction court to find laches. For instance, the opinion from Humphrey’s direct appeal was admitted into evidence at the hearing, but the State made no argument about the framework it provided or that knowledge of remedies could be inferred from it. Similarly, the State made no arguments asserting the three ways such knowledge may be inferred, as described in Perry. See Perry, 512 N.E.2d at 844 (repeated contact with the criminal justice system, consulting with attorneys, and incarceration in institutions with legal facilities). Indeed, the post-conviction court pointed out this precise flaw: “Humphrey did not testify at the hearing on when he learned he could file a Petition for Post-Conviction Relief. The State must prove more than inquiry notice to show unreasonable delay. Perry v. State, 512 N.E.2d 841, 844 (Ind. 1987).” FFCL at 3 (emphasis in original). Moreover, the post-conviction court noted that the State’s key witnesses were available for retrial, indicating the State “has not shown the passage of time has affected their memories or ability to testify at a retrial.” FFCL at 4. In sum, the State could have made its case, but instead hung its hat on one fact that was insufficient by itself to prove unreasonable delay. The State also attempted to prove prejudice by showing witnesses would be unavailable for retrial, but Humphrey’s counsel was successful in rebuttal.[7]
*693 While the State now offers many of these arguments on appeal, it is too late. The State has the burden of proving laches as an affirmative defense, thus the judgment regarding laches will be affirmed unless clearly erroneous. Armstrong, 747 N.E.2d at 1120. We review for sufficiency of the evidence, considering the evidence and reasonable inferences favorable to the judgment, neither reweighing the evidence nor assessing the credibility of witnesses. Id. Given this standard and the record before this Court, we are compelled to affirm the post-conviction court’s determination that Humphrey’s petition was not barred by laches. But make no mistake, being compelled to act is a far cry from being satisfied with the outcome, particularly when the outcome—retrial of a convicted murderer two decades later—can subject the criminal justice system to the dismayed contempt of survivors and the public writ large.
Slaughter, J., concurs.

. See Patterson v. State, 263 Ind. 55, 324 N.E.2d 482 (1975) (holding an out-of-court statement not given under oath could be considered as substantive evidence so long as the declarant was available for cross-examination at trial); see also Modesitt v. State, 578 N.E.2d 649, 653-54 (Ind. 1991) (repudiating the "Patterson” rule and applying Federal Evidence Rule 801 instead. Indiana later adopted its own similar version of 801 in the Indiana Rules of Evidence in 1994, two years before Humphrey's trial).

. There has been no accusation of knowingly making or failing to correct the false statement of law in this case. But, it bears reminding that lawyers practicing in this State are bound by the Indiana Rules of Professional Conduct, particularly the requirement of candor toward the tribunal, See Rule 3.3(a)(1) (“A lawyer shall not knowingly: make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer”); see also Rule 3.3, comment 2 ("[A]l-though a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted in a cause, the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false”).

."Prior inconsistent statements are defined as statements made by the witness out of court which differ from his testimony during this trial. Prior inconsistent statements may be considered by you for two purposes. You may use them to impeach the capacity for truthfulness of the witness who made the inconsistent statements. You may also consider the out-of-court statements as evidence in determining the guilt or innocence of the defendant of the crime charged.” Tr. at 506,

. Indeed, as this Court noted in Humphrey's direct appeal, the "pattern instruction had not been changed to reflect Rule 801 and the demise of the Patterson rule in Modesitt." Humphrey I, 680 N.E.2d at 840, And we further reminded readers that Patterson, which was overruled years before, “does not reflect current law and should not be used in trials in this state.” Id.

. The Court of Appeals found that the post-conviction court failed to address the issue of laches in violation of Indiana Post-Conviction Rule 1(6), which provides the post-conviction court “shall make specific findings of fact, and conclusions of law on all issues presented ...” (emphasis added).

. Regarding some of the evidence, the State may have additional evidentiary burdens at retrial due to the development of Confrontation Clause law, yet another potential issue that, with a better developed record, might have improved the State’s case for laches.

. The following exchange occurred at the post-conviction hearing after testimony re *693 garding the availability of certain witnesses:
The Court: Okay. What's the relevance of the witnesses that you talked about and presented evidence in regard to their location]?
[Public Defender]: To show they’re available ....
The Court: Well, and what did you wish to accomplish with [the witnesses] now?
[Public Defender]: Show [they are] available, Your Honor. To show ...
The Court: For what?
[Public Defender]: [They are] available for retrial. The State—the reason the State went through the business of trying to establish that certain were or were not available is, my understanding, is they’re relying on a[n] affirmative defense ... of laches.
The Court: Okay. Thank you for clearing] that up....
Post-Conviction Relief Tr. at 63.