

FILED

Aug 04 2020, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Terry E. Garber, Jr.,
*Appellant/Defendant,*

v.

State of Indiana,
*Appellee/Plaintiff.*

August 4, 2020

Court of Appeals Case No.
20A-CR-309

Appeal from the Elkhart Superior
Court

The Hon. Kristine A. Osterday,
Judge

Trial Court Cause Nos.
20D01-1903-F3-10

**Bradford, Chief Judge.**

# Case Summary

[1]     In February of 2019, Terry Garber, Jr., forced his way into the apartment of his ex-girlfriend K.M. and forcibly penetrated her anus and vagina with his fingers in the presence of K.M.'s three minor children. When the children interrupted him, Garber struck one on the genitals and beat another repeatedly on his bare buttocks. The State charged Garber with Level 3 felony rape and two counts of Level 6 felony battery. A jury found Garber guilty as charged, and the trial court sentenced him to an aggregate sentence of twenty years of incarceration with two suspended to probation. Garber contends that (1) the trial court abused its discretion in admitting some testimony regarding out-of-court statements made by K.M., (2) the admission of other testimony regarding out-of-court statements by K.M. and allegedly-vouching testimony by a physician who had examined K.M. constituted fundamental error, and (3) his sentence is inappropriately harsh. Because we disagree, we affirm.

# Facts and Procedural History

[2]     In February of 2019, K.M. was living in an Elkhart apartment with her three children: seven-year-old K.J.H., six-year-old K.L.H., and eleven-month-old M.G. M.G. is K.M.'s child with Garber, with whom she had been in a relationship until September or October of 2018. At around 6:00 p.m. on February 14, 2019, Garber came to K.M.'s apartment, and K.M. allowed Garber in, gave him some food, and told him he had to go, which he did. A

short time later, Garber returned and asked if he could stay the night. K.M. told Garber that he could not, and he left.

[3] A short time later, Garber returned again, and when K.M. opened the door to tell him to leave, he forced it open and said, "Daddy's home, b******. Daddy's home." Tr. Vol. IV pp. 27–28. Garber first pinned K.M. against a wall and then a sliding glass door before trying to pull her leggings down as she fought and struggled. Despite K.M.'s struggles, Garber managed to penetrate her anus and vagina with his fingers. K.M. felt like Garber was "trying to pull his thing out" as he was trying to remove her leggings. Tr. Vol. IV p. 39.

[4] By this time, all three children were in the room, screaming. Angered by the interruption, Garber hit K.L.H. on his "private part" before turning his attention to K.J.H., spanking him repeatedly on his bare buttocks. Tr. Vol. IV p. 152. K.M. kicked Garber, which allowed her to collect her children, dial 911, tell the dispatcher that she needed help, and attempt to flee to Quintejah Ward's apartment across the hallway. Before K.M. could reach the other apartment, Garber grabbed her by the hair and attempted to drag her back to her apartment. Ward opened her door, and K.M. yelled "[h]e raped me" before Ward's boyfriend "pinned" Garber, which allowed K.M. and the children to enter Ward's apartment. Tr. Vol. III pp. 139, 140.

[5] Once inside Ward's apartment, K.M. received a return call from 911 and reported that she had been assaulted. K.M. then called her boyfriend Christopher Sawyer and told him that Garber had tried to rape her and had spanked K.J.H. Elkhart Police Corporal Jared Davies responded to the scene,

arriving within minutes. Corporal Davies recorded his interview with K.M. with his body camera, during which K.M. identified Garber as her assailant. After K.M. was transported to a hospital, emergency-room physician Katherine Hughes examined her, and K.M., *inter alia*, told Dr. Hughes that Garber had digitally penetrated her anus and vagina. What was later determined to be Garber's DNA was found under K.M.'s fingernails.

[6] On March 28, 2019, the State charged Garber with Level 3 felony rape and two counts of Level 6 felony battery. A jury trial was held on December 10, 2019, during which the State introduced Corporal Davies's bodycam footage of K.M.'s statement to him and Sawyer's testimony about K.M.'s telephone call. Over Garber's objections, the trial court admitted this testimony on the basis that K.M.'s statements to Sawyer and Corporal Davies had been excited utterances. Ward's testimony that K.M. had yelled that she had been raped and Dr. Hughes's testimony that K.M. had told her that Garber had digitally penetrated her were admitted without objection. The following exchange also occurred during Dr. Hughes's testimony:

> BY [Prosecutor]:
>
> Q. Dr. Hughes, I don't even want to try to imagine how many total patients you have seen throughout the course of your career but through your training and experience, would you agree with me that people are likely to provide accurate information when they're being treated at the emergency room?
>
> A. For the most part, I feel like people are honest. Sometimes I ask them questions about drug abuse or alcoholism or their sexual preferences and they're very honest. I don't think that

there's a reason really for people to lie when they're seeking medical care.

Tr. Vol. III p. 177. Garber did not object to this testimony. The jury found Garber guilty as charged, and on January 21, 2020, the trial court held a sentencing hearing, after which it imposed an aggregate sentence of twenty years of incarceration with two suspended to probation.

# Discussion and Decision

## I. Admission of Evidence

[7] Garber contends that the admission of testimony regarding out-of-court statements made by K.M. and alleged vouching testimony, taken as a whole, constituted fundamental error. In general, a trial court's ruling on the admission or exclusion of evidence is reviewed for an abuse of discretion that results in prejudicial error. *Williams v. State*, 43 N.E.3d 578 (Ind. 2015). A trial court's evidentiary decision will be reversed for an abuse of discretion only where the court's decision is clearly against the logic and effect of the facts and circumstances, or when the court misinterprets the law. *Id*.

[8] If no objection is made to testimony, however, any claim related to its admission is waived for appellate review. *See Wilson v. State*, 931 N.E.2d 914, 919 (Ind. Ct. App. 2010) ("The failure to raise an issue at trial waives the issue on appeal."), *trans. denied*. In such cases, review is limited to determining if fundamental error occurred. The doctrine applies only in "extraordinary circumstances," *Hardley v. State*, 905 N.E.2d 399, 402 (Ind. 2009), and is meant

to cure the "most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). A fundamental error is such a gross error that it renders a fair trial "'impossible.'" *Hardley*, 905 N.E.2d at 402 (quoting *Barany v. State*, 658 N.E.2d 60, 64 (Ind. 1995)).

## A. Testimony Regarding K.M.'s Out-of-Court Statements

[9] Garber contends that the admission of testimony from Ward, Sawyer, Corporal Davies, and Dr. Hughes regarding statements K.M. made to them was erroneous. As an initial matter, Garber did not object to Ward's and Dr. Hughes's testimony, so any claim as to their admission at trial is waived for appellate review. *See, e.g.*, *Wilson*, 931 N.E.2d at 919. In any event, Garber does not contend that any of the above testimony was anything more than merely cumulative of K.M.'s testimony. It is well-settled that even "[t]he improper admission of evidence is harmless error when the erroneously admitted evidence is merely cumulative of other evidence before the trier of fact." *Hunter v. State*, 72 N.E.3d 928, 932 (Ind. Ct. App. 2017), *trans. denied*.

[10] That said, Garber contends the Indiana Supreme Court's opinions in *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991), and *Stone v. State*, 268 Ind. 672, 377 N.E.2d 1372 (1978), require reversal. It is true that *Modisett* and *Stone* are both cases in which the Court addressed the admissibility of testimony regarding out-of-court statements by witnesses, like K.M., who also testified at trial. *Modesitt*, 578

N.E.2d at 654; *Stone*, 268 Ind. at 679, 377 N.E.2d at 1375–76. *Modesitt* and *Stone*, however, do not help Garber.

*Modesitt* and *Stone* both discussed (and *Modesitt* overruled) the Indiana Supreme Court case of *Patterson v. State*, 263 Ind. 55, 324 N.E.2d 482 (1975), which "held that prior out-of-court statements, not under oath, were admissible as substantive evidence if the declarant was present and available for cross examination at the time of the admission of such statements." *Modesitt*, 578 N.E.2d at 651. In response to what the Court saw as impermissible expansion and misapplication of the rule in *Patterson*, and based on a survey of law from other states and Federal Rule of Evidence 801(d)(1), the *Modesitt* Court held that

> a prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross examination concerning the statement, and the statement is (a) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (c) one of identification of a person made after perceiving the person.

*Modesitt*, 578 N.E.2d at 653–54. The *Modesitt* Court also clarified that its "decision d[id] not affect the existing, recognized hearsay rule and its exceptions." *Id*. at 654.

In 1994, the Indiana Rules of Evidence became effective, with the current Rule 801(d)(1) essentially codifying *Modesitt* and providing that

a statement is not hearsay if:

(1) A Declarant-Witness's Prior Statement. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:

> (A) is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition;

> (B) is consistent with the declarant's testimony, and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or

> (C) is an identification of a person shortly after perceiving the person.

While it does not seem that any of K.M.'s statements would qualify for any of the hearsay exclusions mentioned in *Modesitt* and Evidence Rule 801(d), Sawyer's and Corporal Davies's testimony regarding K.M.'s statements to them was admitted on the basis that her statements were excited utterances, and the *Modesitt* Court made it clear that it was not altering the existing law regarding the hearsay rule or its exceptions, one of which was, and still is, an excited utterance.[1] Because K.M.'s statements were admitted as excited utterances, rulings that Garber does not challenge, *Modesitt* simply does not apply in this

---

[1] The "excited utterance" exception to the hearsay rule has long been recognized in Indiana. *See, e.g.,* *Ketcham v. State*, 240 Ind. 107, 111–12, 162 N.E.2d 247, 249 (1959) ("Another exception commonly recognized to the rule against hearsay is that concerning the *res gestae*. [….] The most frequent application has been in the area of spontaneous exclamations, that is, statements made during or after an affray, a collision or the like, used to prove the facts asserted in the statement. The words must be reasonably contemporaneous with the act or incident to which it is connected."). An "excited utterance" is currently defined as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Ind. R. Evid. 803(2).

case. Garber has failed to establish harmful error, much less fundamental error, in this regard.

## B. Dr. Hughes's Statement

[13] As mentioned, when asked if she believed that emergency-room patients provide accurate information, Dr. Hughes replied, "For the most part, I feel like people are honest. Sometimes I ask them questions about drug abuse or alcoholism or their sexual preferences and they're very honest. I don't think that there's a reason really for people to lie when they're seeking medical care." Tr. Vol. III p. 177. Garber did not object to this testimony on the basis that it was impermissible vouching but attempts to avoid the effects of his waiver by claiming that its admission constituted fundamental error.[2]

[14] While we think that Dr. Hughes's testimony comes close to crossing the line, we conclude that the cited testimony does not quite rise to the level of impermissible vouching. It is true that Evidence Rule 704(b) provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Dr. Hughes, however, actually did none of these things. In the cited passage, Dr. Hughes did not opine that K.M. was telling the truth, offering only a general observation on how emergency-

---

[2] Garber actually argues that Dr. Hughes's allegedly-vouching testimony, when considered along with testimony regarding K.M.'s out-of-court statements, constitutes fundamental error. Because we have already concluded that no error occurred in the admission of the testimony regarding the out-of-court statements, however, we address the allegedly-vouching testimony in isolation.

room patients behave based on her experience. This does not quite qualify as impermissible vouching. *See, e.g.*, *Alvarez-Madrigal v. State*, 71 N.E.3d 887, 893 (Ind. Ct. App. 2017) (concluding that testimony from a pediatrician that "some statistics will quote that less than two to three children out of a thousand are making up claims [of molestation]" did not constitute vouching because it "was not a statement as to [the victim's] credibility [or] an opinion regarding the truth of the allegations against Alvarez-Madrigal"), *trans. denied*; *Baumholser v. State*, 62 N.E.3d 411, 416 (Ind. Ct. App. 2016) (concluding that testimony from forensic interviewer that molestation victims often delay disclosure was not vouching because it "did not relate to the truth or falsity of [the victim's] allegations [but was only] a statement about how victims of child molestation behave in general"), *trans. denied*. While we do not wish to encourage the elicitation of testimony similar to Dr. Hughes's in the future, we nonetheless conclude that Garber has failed to establish error in this regard, much less fundamental error.

## II. Inappropriate Sentence

[15] We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied."

*Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). As mentioned, the trial court imposed a significantly-enhanced sentence of twenty years of incarceration (out of a possible maximum of twenty-one years) with two years suspended to probation.[3]

[16] The nature of Garber's offenses is egregious. Garber forced his way into the home of his ex-girlfriend and forcibly penetrated her in front of her minor children, including one that they shared, while she fought and struggled. It seems that Garber's intent was to force intercourse on K.M. as well, had he not been interrupted. When he *was* interrupted by the children, Garber hit one in the genitals and beat another repeatedly on his bare buttocks. As K.M. attempted to flee with the children, Garber grabbed her by the hair and

---

[3] For rape, the trial court could have imposed a sentence of between three and sixteen years of incarceration, with the advisory being nine years, and for battery, sentences of between six months and two and one-half years, with the advisory being one year. Ind. Code §§ 35-50-2-5(b), -7(b).

attempted to force her to the ground while she was holding M.G. The nature of Garber's offenses does not warrant a reduction in his sentence.

[17] As for Garber's character, it is revealed through his extensive criminal record and other criminal activity, and it is not good. Garber, born in October of 1985, had juvenile delinquency adjudications for marijuana dealing in 2000 and battery resulting in bodily injury and two counts of theft in 2003. As an adult, Garber has prior convictions for Class D felony criminal recklessness, Class D felony residential entry, Class D felony strangulation, Class D felony failure to return to lawful detention, Level 6 felony intimidation, Level 6 felony residential entry, Class A misdemeanor resisting law enforcement, Class A misdemeanor domestic battery, Class C misdemeanor operating a vehicle without ever receiving a license, and three counts of Class C misdemeanor illegal consumption of an alcoholic beverage. Moreover, Garber has violated the terms of probation three times and was on probation when he committed the instant offenses. Finally, Garber has admitted to extensive illegal drug and alcohol use, beginning with marijuana at age thirteen; moving on to alcohol at age seventeen or eighteen; and including methamphetamine, heroin, Adderall, and synthetic marijuana. Despite Garber's numerous criminal convictions, many of which involved violence, and other admitted criminal activity, not only has he not chosen to reform himself, his crimes are becoming more serious. In light of the nature of his offenses and his character, Garber has failed to establish that a reduction in his sentence is warranted.

[18] We affirm the judgment of the trial court.

Najam, J., and Mathias, J., concur.